# RUGELY & HARRISON v. ROBINSON, ET AL.

1t A will contained the following provisions beneficial to the testator's son Eli: "I give and bequeath unto my son Wm Robinson, and his heirs, all that tract and parcel of land situate, &c."—[Here follows a description of several tracts of land, and the names of several slaves,]—" to have and to hold the same in trust for the benefit of my son Eli Robinson: but the same shall not be subject to the payment of any debt that he may owe; nor shall the rents and profits of the lands, or the hires of the slaves be applied for

Rugely & Harrison v. Robinson, et al.

the same object, but the same shall be held for the use and benefit of the said Eli T. Robinson and his family, during the term of the said Eli's natural life : and from and after his death to the use of such persons as the same may be devised and bequeathed by the said Eli T. Robinson in his will, and in the event no will shall be made, then to the heirs at law of the said Eli." *Further*, " All the rest and residue of my property, both real and personal, it is my wish and desire should be divided equally among my children. *Item*—It is my wish and desire that the part which shall be assigned to my daughter, Ann J. R. Wyatt, and to my sons, Eli T. Robinson and T. Robinson shall be held and taken subject to the conditions, and uses and reservations that I have expressed in regard to the property specially devised and bequeathed to them severally, in the previous sections of this my last will and testament, and for the purpose of holding and securing the property of the said Tod Robinson, jr. and the said Eli T. Robinson according to the uses—I do hereby appoint and nominate my said son Wm. Robinson a trustee of the same, and do hereby clothe and invest him with full power and authority over the said property, and do give him ample interest in the same to exonerate and discharge and hold it free from the debts that the said Eli and the said Tod may have contracted : and the said William, in conjunction with the said Tod, or in conjunction with the said Eli, may dispose of any part of their respective shares of the said property, when they shall think it best for their interest." *Held*, that the will conferred such an interest upon Eli as his creditors might subject to the payment of his debts in the following manner:—So far as the bequest includes property which is intended to be used jointly by Eli and his family in specie, as a house, furniture, household servants, &c. it is incapable of severance, and cannot be reached by his creditors. So far as it consists of other property, from which a revenue is to be derived by its employment, an account must be taken, and the share of Eli in the nett product, subjected to the payment of his debts. COLLIER, C. J. dissented—being of opinion that the will invested Eli, his wife and children with rights *collectively*, and that the former had no interest which was separate or could be severed from that of the latter, at least for the payment of debts which he owed at the time the bill was made.

2. BY THE WHOLE COURT: When the equity of the bill is not denied, and no objection taken for want of proper parties until the hearing, the bill will not be dismissed because one of the defendants against whom the relief is sought has been declared a bankrupt, which fact is disclosed by his answer; but the complainant will be allowed a reasonable time to bring the proper parties before the court by an amendment, or supplemental bill, unless it should appear, the necessary parties are omitted in the bill by the fraudulent or wilful omission, or by the bad faith of the complainant *Quere*—can an amendment be allowed at the hearing, when the effect would be to make a new case.

Writ of error to the Court of Chancery sitting in Haync-ville.

In September, 1844, the plaintiffs in error exhibited their bill against Eli T. Robinson, William Robinson and Cornelius Robinson, on behalf of themselves and the other creditors of the first named defendant, who might come in and contribute to the expenses of the suit, according to the order and direction of the chancellor. The complainants set forth, that on the 17th day of March, 1836, they recovered a judgment in the circuit court of Montgomery, against the defendant, E. T. Robinson and Edward W. Couch, then residing in that county, for the sum of $7,053 09, damages, and $17 50 costs. On the 28th day of April, of the last named year, a writ of *fieri facias* issued on that judgment, and in four or five days thereafter was placed in the hands of the sheriff of Montgomery to execute, who returned thereon "no property found."

It is further stated, that Couch has since died insolvent, and no administration has been granted upon his estate, (if any he left;) and that his co-defendant in the judgment has no property on which an execution could now be levied, within the knowledge of the complainants. The complainants are however informed, and believe, that E. T. Robinson has an equitable interest in choses in action, and other property, real and personal, to an amount far exceeding their judgment, which is held in trust for him by some other person or persons, and which property, or the proceeds thereof, ought to be appropriated, under the direction of Chancery, to the satisfaction of the judgment. By way of specification under this general charge, it is alledged that Tod Robinson, sen'r, on the 2d February, 1838, made his last will and testament, in which, among other provisions, are contained the following beneficial to his son, E. T. R., viz : "I give and bequeath unto my son William Robinson, and his heirs, all that tract and parcel of land situate," &c. [Here follows a description of several tracts of land, and the names of several slaves,] "to have and to hold the same, in trust for the benefit of my son, Eli Robinson. But the same shall not be subject to the payment of any debt that he may owe; nor shall the rents and profits of the lands, or the hire of the slaves, be

applied for the same object, but the same shall be held for the use and benefit of the said Eli T. Robinson and his family, during the term of the said Eli's natural life; and from and after his death to the use of such persons as the same may be devised and bequeathed by the said Eli T. Robinson in his will, and in the event no will shall be made, then to the heirs at law of the said Eli." *Further,* " All the rest and residue of my property, both real and personal, it is my wish and desire should be divided equally among my children. *Item*— It is my wish and desire that the part which shall be assigned to my daughter, Ann J. R. Wyatt, and to my sons, Eli T. Robinson and Tod Robinson, shall be held and taken subject to the conditions, and uses, and reservations, that I have expressed in regard to the property specially devised and bequeathed to them severally, in the previous sections of this my last will and testament, and for the purpose of holding and securing the property of the said Tod Robinson, jr. and the said Eli T. Robinson, according to the uses—I do hereby appoint and nominate my said son Wm. Robinson, a trustee of the same, and do hereby clothe and invest him with full power and authority over the said property, and do give him ample interest in the same to exonerate and discharge, and hold it free from the debts that the said Eli, and the said Tod may have contracted; and the said William, in conjunction with the said Tod, or in conjunction with the said Eli, may dispose of any part of their respective shares of the said property, when they shall think it best for their interest."

The testator, by a codicil to his will, dated the 7th February, 1838, after directing his executors to keep the slaves bequeathed by his will together for five years, proceeds thus: " My executors will superintend the negroes, and plantation, and every year make an equal distribution of the proceeds thereof, according to the distribution of my property made in the foregoing will, that is to say, a share to each of my children," &c. " to my son William three shares, one for himself, one in trust for my son Eli, and one in trust for my son Tod. I do further devise, that if my daughter, Hannah, should sell the home place, and my son William should buy it, as he promised he would, that he then should hold in

89

trust eighty acres thereof, lying at the camp ground, around the spring, in trust for my son Eli, to be held for my son Eli on the same terms and conditions as the property is held for him in the foregoing testament." William and Cornelius Robinson were nominated executors of the testator's will, and invested with "full power and authority to carry into effect the trusts thereof;" and on the first day of March, 1838, the same was proved in the orphans' court of Autauga, and to the executors designated, the execution of the will was duly committed.

It is also stated, that the defendant, E. T. R. was in possession of a considerable real and personal estate at the time the debt was contracted, on which the judgment in question was rendered; some portion of each description is mentioned, and the defendants called on to discover if there was any other; and whether any, and what portion of such property still remains in the possession of E. T. R. or has been subjected to the trust created by his father's will. The complainants aver, that E. T. R. is the proprietor of a ferry, (particularly described,) across the Alabama river, or has such an interest therein as gives him the profits arising from the same.

The inference deduced from these allegations is, that the trusts created by the will for the benefit of E. T. R. and his family are fraudulent and void as to his creditors; and that the property thus bequeathed, or at least the profits therefrom arising, are liable to the satisfaction of the judgment: *Further*, that the other property to which reference is made as having been in the possession of E. T. R. at the time he became indebted to the complainants, and that to which he is otherwise beneficially entitled, are in like manner liable. The bill contains the appropriate prayers in order to subject the interest proceeded against, to the payment of the judgment.

The defendant, Eli T. Robinson, admits the recovery of the judgment against himself and Edward W. Couch; but insists that the same is not in full force as to him, because, on the 9th day of September, 1842, he filed his petition under the act of Congress of the 19th August, 1841, to "establish a uniform system of bankruptcy throughout the United

Rugely & Harrison v. Robinson, et al.

States ;" and such proceedings were thereupon had as result-
ed in his discharge from liability to pay all his debts. In
proof of which the respondent exhibits, with his answer the
decree by which he was discharged, and certificate conse-
quent thereupon.

Respondent supposes that a *fieri facias* was issued by the
complainants upon their judgment as alledged, and placed in
the hands of the sheriff of Montgomery, but he denies that he
was then a resident of that county, or had any property there.
Admits that Couch died insolvent, and does not doubt but
the execution was returned "no property found." From the
1st January, 1835 to 1837, respondent resided in Lowndes
county, and what property he owned was there; he then re-
moved to Autauga, where he has lived ever since, with all
such estate as he may have.

Respondent further admits, that his deceased father, Tod
Robinson did, in his lifetime, make his last will and testa-
ment, with codicils as alledged by the complainants; but he
denies that the provisions of the same, so far as drawn in
question by the bill, are opposed to policy, or for other cause
inoperative against the respondent's creditors. If, however,
the objections to the bequest were well taken, it is insisted,
that it should be urged at law, and that it is not permissible
to come into equity to obtain a construction of the will. He
admits that he has no property from which complainants ex-
ecution can be satisfied, and that all he possesses, or enjoys,
is under the will of his father, with the exception of three
slaves, named Andrew, Parmelia and George. These slaves
were acquired under the following circumstances, viz : After
the testator made his will, he requested the co-defendant,
William Robinson to hold for the use of the respondent, a
ware-house and ten acres of land at the ferry. The respon-
dent was accordingly permitted to lease the ware-house for
four years, and receive the rents; and with this money he
purchased Andrew, Parmelia, and George. He cannot un-
dertake to say what property he owned, or was possessed of,
at the time he became indebted to the complainants; but he
denies that the testator devised or bequeathed to him any
thing that he had previously given him, or of which the res-
pondent had otherwise become the proprietor; or that he

now holds any choses in action, or property in any other form, except as above stated.

· Respondent admits that the executors nominated by the testator's will, have proved the same, and taken· upon themselves its execution; that his co-defendant, William, has as trustee, permitted him to take possession of some of the property, use it as contemplated by the testator, and to receive the profits for himself and family. With the profits thus received, he has purchased slaves and other property, described in the answer. He denies that the trustee had any thing in his hands to which the respondent was entitled ; that he received a profit from the use of the trust property, was admitted, but insists that he had paid it over previous to the institution of this suit. The eighty acres of land which were to be held in trust for the respondent, if purchased by his co-defendant, William, were never purchased, and consequently the former has no interest in it.

It is insisted that the provisions of the will are conformable to law, that they are not obnoxious to any extrinsic objection ; and the defendant, by his answer, insists upon the benefit of a demurror to the bill.

Wm. Robinson makes an answer, in substance the same as his co-defendant, Eli T. Robinson, and in addition states that this *cestui que trust* has a wife and three children living ; that he has permitted him to superintend the trust property for the benefit of himself and family, because he supposed he was carrying out the intention of the testator. But he did, and still does suppose, that he was authorized to reclaim and take possession of that property whenever he thought proper; and certainly should exercise the right if he were to discover that the management of the *cestui que trust* was injudicious, or the trust abused. This respondent also embraces in his answer a demurrer to the bill.

The answer of Cornelius Robinson, so far as it is material· to notice it, is not essentially different from these that have been recited. It was admitted that the complainants recovered a judgment, and a *fieri facias* thereon was issued and returned as alledged in their bill ; and the discharge of the defendant, E. T. Robinson, under the bankrupt act of 1841, was proved in due form.

The cause was brought to a hearing by consent of parties on bill and answers, and the chancellor being of opinion that the case of McDougald v. Read and Talbot, 5 Ala. Rep. 810, declared that the effect of a decree in bankruptcy was to dis-charge the debts of the bankrupt, whether due by judgment or otherwise, the complainant had no subsisting demand which could be enforced in equity; consequently the bill was dismissed with costs.

R. SAFFOLD and J. P. SAFFOLD, for the plaintiff in error, contended, that the case upon which the chancellor rested the decree of dismissal, did not sustain him.   The question there was not, whether the discharge of a bankrupt from his debts so operated as to release liens acquired by judgment and execution previous to the proceedings in bankruptcy. To prove that it had no such effect, he cited Ex parte Foster, 5 L. Rep. 55; In the matter of Cook, Id. 443; Kittredge v. Warren, 7 Id. 77; Kittredge v. Emerson, Id. 312; 2 Caine's Rep. 300; 1 Wash. C. C. Rep. 29.   It is competent for the State courts to determine the effect of the certificate as against its own process.   [Mosby v. Steele & Metcalfe, 7 Ala. Rep. 299; Hargroves v. Cloud, 8 Id. 173; Doremus, Suydam & Co. v. Walker, Id. 194; In the matter of Chaney, 5 L. Rep. 22; Smith v. Gordon, et al. 6 Id. 313; Norton's Assignee v. Boyd, et al. 3 How. Rep. U. S. 426; Sands, et al. v. Cod-wise, 4 Johns. Rep. 546.]

It cannot be presumed upon the bill and answer, that the execution had lost its lien by the failure to renew it.   The allegations of the bill are sufficient to give the court jurisdic-tion, and nothing more can be required.   See cases cited in P. & M. Bank v. Walker, et al. 7 Ala. Rep. 926.   In respect to the land, the judgment operates a lien upon that, and there is no pretence for saying that it has been impaired—all that is necessary to authorize the complainant to come into equity to subject it, is, to show that an execution issued upon the judgment has been unavailing.

All the defendants are proper parties to the bill, either as executors, trustee or *cestui que trust.*   The bill does not seek a remedy against the person of the defendant at law, or against acquisitions of property made since he filed his peti-

tion in bankruptcy ; but it seeks to subject property not embraced by the schedule, and which, though several years have elapsed, the assignee has never attempted to take into his possession. The complainants never came in as creditors, and may charge the property in question, if it be liable. [Smith v. Gordon, 6 L. Rep. 43.] The assignee might perhaps be appointed a receiver, and dispose of the proceeds of the property amongst all the creditors according to their legal priorities. If there are other creditors it may be allowable for them to come in, and unite with the complainant on the usual terms.

If the validity of the bankrupt's discharge is necessarily involved, (a proposition for which the complainant's counsel does not contend,) it is sufficiently put in issue by the bill and answers.

The provisions of the will, so far as they secure property to trustees for the use of E. T. Robinson, or himself and family are void as to creditors. The cases of Foley v. Burnell, 1 Bro. Ch. Rep. 274; Brandon v. Robinson, 18 Ves. Rep. 429, are in principle strikingly analagous to the present; and it was held, that if property be given by will, or otherwise, it must remain subject to the incidents of property, and will be liable to the payment of the donee's debts, and upon his bankruptcy, to his assignees. The cases to this point are numerous and explicit, and the interposition of a trustee cannot give to the donee a title paramount to the claims of his creditors in equity. [Dormett v. Bedford, 3 Ves. Rep. 149 ; Graves v. Dolphin, 1 Sim. Rep. 66 ; Green v. Spicer, 1 Russ. & M. Rep. 395 ; Yamod v. Morehouse, 1 Id. 364; Piercy v. Roberts, 1 M. & Keene's Rep. 4.]

Trusts can't be created with a *proviso* that *cestuis que trust* shall not alien their interest, or that the trust property shall not be liable to creditors. If it was intended that the trustee should take a vested interest, presently, or at some future time, no matter how or when it was to take place, the entire interest may be disposed of by *cestui que trust*, or become vested in his assignees by the operation of law, or by bankruptcy, or insolvency. [Lewen on Trusts, &c. 138-9 ; Lear v. Leggett, 1 Russ. & M. Rep. 690 ; see also Harkins, et al. v. Coalter, et al. 2 Porter's Rep. 463 ; Carlton & Co. v. Banks,

Rugely & Harrison v. Robinson, et al.

7 Ala. Rep. 32; Br. Bank at Montgomery v. Wilkins, Id. 589; Lucas v. Atwood, 2 Stew Rep. 378; Hallett v. Thompson, et al. 5 Paige's Rep. 583.]

If the testator had provided that upon the seizure of the trust estate under process for the debts of *cestuis que trust* their interest therein should cease or be forfeited, it might perhaps have been secured against his creditor. Some cases may be found which recognize the validity as against a donee's creditors of a bare support to him alone, or in conjunction with wife and children—extending even to the education of the children. But such settlement must *explicitly* provide for these objects—the debtor must have no legal or equitable control, or permanent interest; the property must be left subject to the discretion of a trustee, to be appropriated by him, and upon the death of the *cestui que trust*, must not be limited to his heirs or distributees. Upon the whole, it may be deduced from the authorities that the settlement in question if not fraudulent in fact, is fraudulent in law, against public policy, and cannot be supported.

T. WILLIAMS and J. A. CAMPBELL, for the defendants. The testator, during his life, provided for his son and family, and by his will he substituted his son William, in his stead. Though the property is set apart and spoken of as E. T. Robinson's, this is simply the designation of a share, while the entire control of it is committed to the trustee, so far as it may be necessary to enable him to carry the purposes of the trust into effect.

It is supposed that the intentions of the testator cannot be carried out, and the property which he attempted to settle upon William, for the benefit of Eli and his family, be exempted from the payment of debts. 1. Because the condition under which the property is to be enjoyed are repugnant to the grant, and its enjoyment necessarily subjects it to the creditors of Eli. 2. The conditions or uses are void, because they are opposed to public policy.

A condition wholly destructive of an estate is void, and will be rejected. [Shep. Touch. 129; 5 Vin. Ab. 105, Aa; 2 Cruise's Dig. § 19, *et seq.*] A restriction upon the right of a party to sell for a limited time, not extending beyond the

life of a party in being is good. [2 Sergt. & R. Rep. 507; see also 2 How. Rep. U. S. 197.] So a party may be restricted to selling to a limited number of persons. [2 Co. Lit. 30; 6 East's Rep. 173; 7 Dana's Rep. 435.] If an estate may be protected against one class of purchasers, why can't it be protected against creditors? The *owner of property* may *on alienation* qualify the interest of his alienee, by a condition, to take effect on bankruptcy, insolvency, &c.; but he cannot by contract, or otherwise qualify *his own interest* by a condition determining or controlling it in the event of his own bankruptcy, to the disappointment or delay of his creditors. [1 Swanst. Rep. 480, note a; 2 T. Rep. 133; 8 Id. 57, 300; 3 M. & S. Rep. 353; 7 Johns. Rep. 534; Atherley on Mar. Set. 156; 3 Stew. Rep. 521; 18 Ves. Rep. 433; 5 Mad. Rep. 405; 1 Ball & B. Rep. 113; 6 T. Rep. 674; 4 Eng. Cond. Ch. Rep. 467; 15 Id. 609.]

There are a series of cases in which there were conditions against alienations and incumbrances by the party; such conditions, it has been held, do not extend to dispositions *in invitum*, by operation of law. These decisions all however recognize the legality of such conditions, where the terms employed are such as to create them. [1 Eng. Cond. Ch. R. 34; 4 Id. 484; Coop. Ch. Cases, 259.] If then the terms employed by the testator amount to a condition, that condition is legal, and the facts bring the case within the terms of the principle recognized in 4 Eng. Cond. Ch. Rep. 467.] That the will does create a condition is obvious enough, when the intention of the testator, as gathered from the language employed is understood. William Robinson as trustee for his brother and family, has ample powers over the trust estate to hold it free and discharged from Eli's debts, while the latter is merely to draw a subsistence from the produce of its employment. Eli can neither sell, or enforce the sale of any part of it. [1 Bur. Rep. 38; 3 Lomax Dig. 119, § 4; 3 Edw. Ch. Rep. 68; 7 Ves. Rep. 391; 13 Id. 445.]

The counsel here cited 3 Ves. Rep. 324; 1 Jac. & W. R. 154; 1 Eden's Rep. 435; 1 Eng. Cond. Ch. Rep. 34; 6 Id. 72, 457, 464; 7 Id. 317; 13 Id. 275; 15 Id. 430, 436, note; 16 Id. 378, 430; 9 Paige's Rep. 363, as expositions of the rule that a party shall not clog an estate conveyed by him

with a condition which defeats it; and contended that they were consistent with the idea that the will in this case contained an operative condition. They further insisted, that if it were necessary to give effect to the testator's wishes, the estate which his son Eli derived under the will, would be considered at an end, whenever an attempt was made to divert it from the object of its creation.

If it be held that there is no condition, we then insist that E. T. R. has no estate under the will of his father that can be reached, either at law or in equity. The property in question is given to Wm. R. and his heirs, in trust, *for the benefit of E. T. R.*, with the express declaration that the same shall not be subject to the payment of any debt the latter may owe. Not only the property devised and bequeathed by the will are thus exempted, but so are the rents, profits, &c. The fulness of the power of the trustee has been already noticed; and this in connection with the other limitations upon the right of enjoyment of E. T. R., shows that the latter has no interest under his father's will, which upon his insolvency would pass to an assignee; nor could the property, or its profits, be reached by process of garnishment against the trustee?

The cases cited by the plaintiffs to prove that property cannot be settled so as to secure to a debtor its possession, or the enjoyment of its profits, will all be found to rest upon the policy of bankrupt or insolvent acts, which determine all interests, however minute, to be intended for the payment of debts; and hold that a settlement in trust or otherwise, on a bankrupt, passes to his assignee. [1 Steph. N. P. 593, 598-9; Rev. Sta. of N. Y. 728, §§ 55, 57; 732, *et post*, §§ 81, 93; 5 Paige's Rep. 583; U. S. Bankr. Act of 1841; 18 Ves. R. 429; 1 Cond. Eng. Ch. Rep. 34; 4 Id. 483; 6 Id. 469; 1 Swans. Rep. 481, and note.] The statutes referred to transcend the unassisted powers of a court of chancery. Equity will not ordinarily control or determine the discretion of a trustee. To induce its interference with property, at the suit of a creditor, it must have vested in the debtor, either legally or equitably, and have acquired a tangible shape. To show that the bankrupt acts go in advance of chancery in subject-

90

ing the bankrupt's estate, they cited 2 Brock. 285; 6 Monr.
Rep. 266; 8 Ala. Rep. 146; Sugden on Pow. 336; and in-
sisted that our laws do not inhibit a parent from settling pro-
perty, to be applied from time to time to the benefit of his
child. But if a policy corresponding with that of the Eng-
lish bankrupt law be acknowledged, the powers conferred
upon the trustee, the studied effort of the testator to secure
the property against the creditors of his son, would frustrate
its operation. It is again repeated that the trustee holds sub-
ject to a condition. [3 Swanst. Rep. 521.]

It must be observed that the trust here created, is not for
the debtor only, but it is for his family also ; that is, his wife
and children. See 6 Hill's N. Y. Rep. 642; 1 Roper on Leg.
115; 5 Ves. Rep. 166: 13 Eng. Cond. Ch. Rep. 449; 15
Eng. C. L. Rep. 177, and note, p. 187. The will makes a
settlement for the benefit *of all of them*, and it cannot be ap-
propriated to the payment of the debts of any one of them.
Such a destination would defeat the intention of the testator,
as most clearly expressed. [5 Munf. Rep. 86; 1 Leigh's R.
443 ; 4 Id. 550, 568.]

The case of the Branch Bank at Montgomery v. Wilkins,
is not in conflict with this view, and the point to which the
cases are now cited from the Virginia and Kentucky Reports
did not then arise. It merely decides that the husband and
wife are one person in law, and an estate to both passes to
the former—it does not hold, that when a *joint estate* is cre-
ated, that the entire interest shall belong to the husband ; or
that the court will apportion benefits which the testator in-
tended and said should be jointly enjoyed. At the common
law, the conveyance of an estate to husband and wife does
not make them joint tenants, but gives *to each the entirety*,
without the right in either to alienate ; and the survivor takes
the whole. Where there is no separate interest in the hus-
band, it is not competent for the court to subject it to the
payment of his debts. [15 Eng. C. Ch. Rep. 81, 86, 87, and
note.] These last citations most conclusively show, that a
father may settle property in trust for his son, wife and chil-
dren *collectively*, so as to exempt it from liability for his son's
debts.

The argument upon this point having closed, Mr. CAMP-

BELL furnished the court with some additional citations and suggestions in writing, from which the following statement is condensed. In Kearsley v. Woodcock, 3 Hare's R. 185, the principles on which the defendant's counsel have endeavored to rest the validity of the devise in the case at bar, are clearly and fully maintained. It is there laid down as one of the turning points of the case, that while the separate interest of a bankrupt in property is liable for his debts, yet if he has an interest to be enjoyed through a trustee, so interwoven with that of other objects of the testator's bounty, as not to be capable of separation, the interests of those objects are paramount to those of the assignee in bankruptcy. In Rippon v. Norton, 2 Beav. Rep. 63, the court separated the interest of the husband from that of the children ; but there the wife was dead, and the decision rested upon the circumstances of the case. *Again*, in Page v. Way, 3 Beav. Rep. 20, a settlement made by a husband, upon himself, his wife and children, by the interposition of a trustee, with liberal powers, was upheld against the assignee of the husband, upon his afterwards becoming a bankrupt. If these authorities are recognized, the provision made by the testator in the present case is valid, even if it were necessary to encounter the English bankrupt and insolvent laws.

The case of Lord v. Bunn, 2 Younge & Coll. Rep. 98, is well considered, and maintains the principle for which the defendants contend, viz : that the clause in the will invests the trustee *with full power, and ample interest in the property in question, to exonerate and hold it free from Eli T. R. and his old engagements.* Ashurst v. Given, 5 W. & Sergt. Rep. 323, cited from Am. L. Mag. April, 1844, determines, that a father may settle property on his son, and provide for its exemption from the demands of a class of creditors.

It is admitted, when there is a right in the thing vested in the beneficiary, over which the trustee has no control, the former may alien, and his creditors may appropriate and apply that right to the payment of their debts. The cases which the complainants counsel have cited, rest upon the principle, that the bankrupt may call for the appropriation of the property to his individual use—he has a power of appointment —and the bankrupt act seizes the estate, as well as powers of

a bankrupt, and applies it to the use of his creditors. Estates will be applied in chancery, but not powers, or possibilities.

The counsel for the defendant, in respect to the discharge of Eli T. R. under the bankrupt act of 1841, contended that it satisfied the plaintiff's judgment quite as effectually as if it had been paid off with money; and a court of chancery will not consider it in full force, merely for the purpose of directing its satisfaction. [McDougald v. Reid, 5 Ala. Rep. 810.] Although the plaintiff in the argument suggested that the decree was fraudulent, the pleadings did not assail its validity for that cause, and of course the suggestion could have no influence.

If it is proposed to controvert the effect of the discharge in bankruptcy, or subject the estate which was the bankrupt's to the payment of his debts, the assignee should have been made a party to the cause, or it should have been shown by proper averments that it was unnecessary; as that the assignee was chargeable with collusion, &c. [Story's Eq. Pl. § 516, 726; Calvert on Part. 199; 1 Ves. & B. Rep. 545; 9 Ves. Rep. 77; 11 Eng. Cond. Ch. Rep. 306; 1 Smith's Ch. Prac. 514.]

No execution was issued upon the plaintiff's judgment after the death of the testator; a fi. fa. previously issued did not operate a lien upon subsequent acquisitions of the defendant in the judgment; and as for the land, his title at most would be equitable, upon which no lien attached. Whatever estate then, Eli T. R. had under his father's will, if liable to creditors, passed to the assignee.

The Judges delivered their opinions *seriatim*.

COLLIER, C. J.—This cause is not only important to the parties themselves, but it involves principles of great public interest. It may be regarded as almost *res integra* in our adjucations, and therefore before undertaking to employ our own reasoning, or to express the conclusions of our judgment, we propose briefly to consider some of the decisions that may have been made in analagous cases elsewhere. The question is, did the defendant in the judgment at law acquire such

an interest in the property settled by his father's will, as makes it subject to the payment of his debts.

In Brandon v. Robinson, 18 Ves. Rep. 429, the Lord Chancellor said that property may be given to a man until he shall become bankrupt; but a disposition to a man until he shall become bankrupt, and after his bankruptcy, over, is quite different from an attempt to give to him for his life, with a a proviso that he shall not sell or alien it. If the condition is expressed so as to amount to a limitation, neither the man nor his assignees can have it beyond the period limited; but while it is his property, it must be subject to the incidents of property; and therefore to debts: *Further*, where property is devised to trustees to be sold, and the produce to be paid from time to time into the proper hands of a man, or on his proper order or receipt subscribed with his own hand, that it should not be grantable or assignable by way of anticipation of any unreceived payment; on his decease the principal to be paid to such persons as in course of administration would become entitled to his personal estate. *It was held*, that if a personal receipt was a necessary act, and the *cestui que trust* would not give it, yet a court of equity would subject such unreceived arrears to the payment of his debts. The court also said, that to prevent such an interest from passing under a commission of bankruptcy against the beneficiary it should be given to some one else. See also, 3 Ves. jr. Rep. 149; 2 Russ. & M. Rep. 197.

So where the testator gave his real and personal estate to trustees in trust to pay an annuity of £500, to his son John for life, "for his personal maintenance and support during the whole term of his natural life, and shall not, nor shall any part thereof," &c. "be subject or liable to the debts, engagements, charges, or incumbrances of him, my said son;" but the same shall, from time to time, when due and payable, "be paid over into the proper hands of him, my said son, only," and his receipt, and that of no one else, shall be a good and sufficient discharge to the trustees. The beneficiary having become a bankrupt, the question was, whether the annuity passed to the assignees by the assignment of the commissioners. *The Vice Chancellor* decided, that "the testator might if he had thought fit, have made the annuity determinable

by the bankruptcy of his son, but the policy of the law does not permit property to be so limited, that it shall continue in the enjoyment of the bankrupt, notwithstanding his bankruptcy; consequently, the assignee was adjudged to be entitled to the annuity. [Graves v. Dolphin, 1 Sim. Rep. 66; see also, 2 Iredell's Eq. Rep. 181.]

In Piercy v. Roberts, 1 Mylne & K. Rep. 4, it appears that property was bequeathed to trustees to be paid to a son in such sums, time, &c. as they might think proper; if the son died before all the residue of the legacy was paid or applied, the residue was provided for : *Held*, upon the son's taking the benefit of the insolvent debtors' act, the assignee of his estate was entitled to the balance unpaid, with interest. But where the testator bequeathed certain stocks to his executors, upon trust, to pay the dividends to his nephew, " for the sole purposes of the maintenance and support of himself and family," with an inhibition of " the power to charge, assign, anticipate or encumber them," with the declaration that if he should attempt to do so, or the dividends, by bankruptcy, or otherwise, should be assigned &c. to any other person, &c. for any other purpose than the trust, then his interest should cease, and the stock be held for the benefit of his children. [Yarnold v. Morehouse, 1 Russ. & M. Rep. 364.]

In Hallett v. Thompson, et al. 5 Paige's Rep. 583, the will provided that neither the legacy or interest thereon should be liable to the legatee's debts, but authorized him to require the payment of the legacy to himself. The chancellor decided that this power was so beneficial, it would pass to his assignee under the insolvent debtors' act of New York : *Further*, that a creditor's bill would reach and subject the fund to the legatee's debts. It was admitted that a trust might be created of personal property, and the income applied to the use of the *cestui que trust*, and the trust estate placed beyond the reach of creditors. But thus to protect trust property, it must be unalienable during the beneficiarie's life, or so long as the trust continues.

Lewen, in his Treatise upon Trusts and Trustees, says, if a person for whose benefit property is settled upon trust, takes a vested interest, the time and mode of its enjoyment is immaterial. The entire interest may be disposed of by

him, or may become vested in his assignees on his bankruptcy, or insolvency—pp. 138-9, 140.

A bequest to trustees to be paid to the father, to enable him to maintain a child, it has been adjudged does not confer an interest upon the former, and an assignment for the benefit of his creditors passes no interest to his assigness. [Wetherell v. Wilson, 15 Cond. Eng. Ch. Rep. 81.] So a bequest by a testator to his wife of his residuary personal estate, to the intent that she might dispose of the same to the benefit of herself and their children, in such manner as she might deem most advantageous, does not vest in the wife an absolute interest. Equity will not deprive the widow of the honest exercise of the discretion which the testator has vested in her, or refuse its assistance to inquire into, or to sanction any reasonable arrangement which she may desire to make. [Raikes v. Ward, 1 Hare's Rep. 445.]

In Hughes v. Pledge and others, 1 Leigh's Rep. 443, by a marriage settlement, slaves were settled to the use of husband and wife during their joint lives—to the wife if she survive—if she die before the husband, then to whom she shall appoint—in default of such appointment, to the husband for life, and after to the offspring of her marriage, *to the intent that the property shall not be subject to the disposal, debts, contracts, or engagements of the husband:* Held, that during the wife's life, the husband could not dispose of the property, nor was it subject to the payment of his debts. See also, 5 Munf. Rep. 86.

Although it has been said, that the right to alienate a freehold estate cannot be restricted, when there is no gift or disposition over in the event of alienation, yet it has been held, "that in a will any condition or modification may be annexed which does not offend against a rule of law, and it is immaterial by what form of words the intention is executed; whether by a devise until the devisee shall have encumbered it, or by a proviso by a limitation over upon such an event. Each mode is equally valid and of the same effect." *Further,* although the courts look with a jealous eye on restraints upon alienation, yet it is now clear, that he who gives may annex such conditions to the gift. [Wilkinson v. Wilkinson, 3 Swan. R. 522; see also, 1 Swanst. R. 481, note.] Where property

given to a married woman, to her sole and separate use, alienation may be prohibited in respect to the property settled, without annexing any limitation over to operate by way of defeasance of the first estate ; but this is supposed to rest upon reasoning inapplicable to restraints upon alienation in ordinary cases. [Woodmeston v. Walker, 2 Russ. & M. Rep. 197 ; see further, 11 Ves. Rep. 221; 7 Dana's Rep. 438 to 441.[

The word "family," when used in a will, may be enlarged or restricted according to the context. If a legacy be given to, or for the benefit of A's family, the word "family," may be so explained by the context of the will, as to be construed to mean the children of A, to the exclusion of his father. [Barnes v. Patch, 8 Ves. Rep. 604-7.] So where power was given by will to appoint for the benefit of *a married woman and her family*, unless controlled or influenced by some other clause or expression, it will not include the husband. [McLerath v. Bacon, 5 Ves. Rep. 159; see also, 17 Ves. Rep. 263 ; 9 Id. 319 ; 1 Roper on Leg. 115 to 119 ; 15 Cond. Eng. Ch. Rep. 177.]

The law extends great indulgence to wills. It does not permit the intention of the testator as to the disposition of his property by will to be defeated, where such intention can be ascertained upon a careful examination of the whole will, and is not inconsistent with the rules of law. Although technical language may not have been used, or even words been misapplied, if the intent is discoverable, this is sufficient; and even if the will is illegal and void in some of its provisions, it shall be sustained so far as it is consistent with law, unless the different parts are so dependent on each other that they cannot be separated. *Further*, where there are clauses that cannot be reconciled, the rule is, to give effect to the last clause, as the final determination of the testator ; unless the intention of the testator, as apparent from other parts of the will, requires a different construction. Full effect should be given to the particular intent of the testator, but it will be controlled by the general intent if they come in conflict. [Parks v. Parks, 9 Paige's Rep. 107 ; see also, Id. 521 ; 8 Porter's Rep. 197, 380.]

In the case at bar, the testator devised and bequeathed un-

Rugely & Harrison v. Robinson, et al.

to his son William, several tracts of land and slaves, in trust for the benefit of his son Eli, and provides that the same and the rents and hires thereof, shall not be subject to the payment of any debts that the latter may owe; but shall be held ror the use and benefit of *Eli and his family*, during the life of Eli, and after his death to the use of such persons to whom he may devise and bequeath by his will; should Eli make no will then to his " heirs at law."

In respect to the residue of the testator's property, not specifically designated, he directs that it shall be divided amongst his children; the portion that may be assigned to his son Eli, shall be taken and held subject to the conditions, uses and reservations expressed in regard to the property specifically devised and bequeathed; and for the purpose of securing the property accordingly, Wm. is again named as a trustee, with full power and authority over this property, and ample interest in the same to hold it free from the debts that Eli may have contracted. The trustee, in conjunction with Eli and Tod, may dispose of any portion of their respective parts of the trust estate, " when they shall think it best for their interest."

It is not necessary to consider the effect of the codicil, for it is a mere reiteration of the trust, so far as it respects the property sought to be subjected by the complainants.

Here is no trust for Eli, exclusively. True, in the first clause quoted, it is declared that the trustee shall hold in trust for the testator's son, Eli, but in the succeeding sentence it is provided that the trust estate, or its produce, shall not be subject to the payment of any debt "he may owe;" " but the same shall be held for the use and benefit of Eli, and his family, during his life." This is a clear indication that the son was not intended by the testator as the sole object of his concern and bounty, but those who claimed the first regard of the son, and looked to him as one who was to supply their wants were not forgotten. If, in declaring the trusts, there is such a conflict in different parts of the will as could not be reconciled by the apparent intent, then upon a rule of construction already noticed, the latest declaration will control; and this we have seen makes the son and his family the beneficiaries.

91

The term "family," it has been already shown, is a word of more or less extensive import, according as the context of the will may indicate. Here it is not to be understood in its more enlarged sense, as synonymous with "kindred," or "relations;" nor can it comprehend brothers and sisters, for these are all provided for by the will. It must then be taken to mean in this instance, the wife and children of the testator's son Eli; for it is shown by the proof that he is both a husband and father.

Eli has the power of disposing of the land, and other property settled by the will of his father, by devising and bequeathing the use of the same to such persons as he may think proper; but should he die intestate in respect to the trust estate, then it shall descend to his heirs. It is perfectly clear that the right of the family to the use and benefit of the property, and its income cannot be defeated during the life of Eli; nor is it obligatory upon him to change its destination after his death. The authority to direct the use to other persons, is a mere naked power, of which he may forego the exercise, and in regard to which he cannot be controlled by any tribunal. This conclusion is clearly indicated, by the failure of Eli to appoint beneficiaries of the trust, being distinctly provided for, and the direction of the testator himself who should succeed in such case, to its enjoyment.

There can be no question but the testator intended so to secure the property in question, that it should not be subject to the debts which Eli had previously contracted. To that end he invested the trustee with full power and authority over it, and gave him ample interest in the same. This intention, we think cannot be carried out, if it should he held that Eli has such a vested interest as is liable to the payment of his debts, merely because, in the event of his bankruptcy, or the seizure of the property under legal process, it was not provided that, that interest should determine, and vest in some one else. Whether Eli has a vested interest we will not now stop to inquire.

If Eli had the power during life to dispose of the trust estate, by an act or instrument to take effect previous to his death, and thus place himself in possession of its equivalent, perhaps some of the cases cited would furnish authority for

Rugely & Harrison v. Robinson, et al.

maintaining that he had an interest which equity would subject to the payment of his debts. But he has no such power. In conjunction with the trustee, "when they shall think it best for their interest," the trustee and Eli were authorized to dispose of any part of the trust estate. In disposing of the property under this clause, the interest of Eli and the trustee were not alone to be consulted, but regard was to be had to the purpose and object of the trust, and the interest of *all the beneficiaries.* This is indicated by the context, and of course determines the testator's meaning.

In this view of the case, no question arises as to the right of the donor, or settlor of property, to restrict the right of alienation; for we do not understand it to be controverted that property may not be given by will in trust for *a man and his family, or the family of a particular individual.*

Having attained the conclusion that the testator's intention in respect to his son's family, is consistent with law and must therefore be executed, the questions arise whether Eli has an interest separate from his family, which can be subjected to the payment of his debts ; and if he has a distinct interest, can it be appropriated by a decree in this suit ?

Although Eli is authorized to make a will, so as to direct who shall succeed to the trust estate after his death, yet there is no legal obligation upon him to execute the power ; nor can its performance be coerced. And if it were possible for any court to enforce it, no tribunal could trammel his discretion in designating devisees as legatees ; consequently no inference can be made from this power, favorable to the complainants.

It is clear that Eli has no interest in the trust property separate from his family, which could be devoted to the payment of his debts, by means of a creditor's bill or otherwise; and we cannot very well conceive how any part of the income can be diverted from the destination given to it by the testator. The settlement is for the benefit of the son and his family, during the life of the former, with the power to dispose of it by will; and if the son makes no will, then to his heirs. True, the beneficiaries are entitled to a maintenance from the trust property, but not to diminish it, or prevent its accumu-

lation, by appropriating the income to the payment of debts having no connection with the maintenance of either of them, or debts previously contracted by the son. The testamentary appointees of the son, if any, and if there are none, his heirs are entitled to receive the estate with its increase. Besides, it may be asked, if the beneficiaries have not an equal interest in all and every part of the property, so as to insure an ample competency under all circumstances; and can the income, beyond what is necessary for the current expenses of the family, be applied to the pre-existing debts of the son, without impairing their rights? Does not the ample powers of the trustee prevent the right of property from vesting in the son? The cases cited from Leigh's and Munfords reports, if sustainable, we think, furnish an affirmative response to these questions; and the citations which follow are entirely favorable to our reasoning on this point.

Rippon v. Norton, 2 Beav. Rep. 63, is distinguishable from the case at bar. There property was settled by a father on his son, to enjoy the profits, &c. until he should take the benefit of the insolvent act, &c., and then the trustees, during the son's life, were to apply such parts of the profits and produce as would have been payable, or belonged to him in such manner and to such persons, *for the board, lodging and subsistence of himself and his family*, as they (the trustees) should think proper; and after the decease of the son, upon trust for such persons as he should appoint, and in default, and until such appointment, in trust for the children. The bill was filed by the three children of the son, who were infants, praying the establishment of the deed, that the rights of the parties under it might be ascertained, &c. The master of the rolls sustained the right of the complainants, under the designation of "family," and their mother being dead, adjudged that they were entitled to three-fourths of the profits which might accrue during their father's life, and that the residue of the profits for the same period should go to the assignees of the son. Here it will be observed, that the power of appointment vested in the son, did not give him such an interest in the trust estate, or its income, as subjected it to his debts. But his share of the income, which, upon his insolvency, was to be appropriated for board, lodging, and subsistence, was sus-

ceptible of ascertainment and severance, by proportioning it to the number to be provided for. This the court seems equitably to have arranged.

The case of Page v. Way, 3 Beav. Rep. 20, may also be distinguished from that now before us. There, by a settlement made on marriage, the husband conveyed a part of his freehold and personal estate to trustees, to receive the rents and profits, and pay and apply the same *for the maintenance and support of the husband, his wife and children*, if any; or if the trustees thought proper, they were authorized to permit the rents, &c., to be received by the husband during his life; and after his death to apply the same towards the maintenance of the wife and children, if any, or if the trustees thought proper, to pay them to the wife for life, without power of anticipation, with remainder to the children, and in default, to the husband absolutely. The assignees of the husband, upon his becoming a bankrupt, insisted upon a right to the entire income of the property; but the master of the rolls held, that although the trustees could, in their discretion, have given the husband the whole income, yet it was their duty to see that the wife and children were maintained; hence it was, that this charge was required to be first borne by the income, before any part of it could be devoted to the husband's creditors. Kearsley v. Woodcock, 3 Hare's Rep. 185, is strikingly analagous to the foregoing in its facts, and the court rendered a similar decree.

The distinction between the two cases last cited, and the one at bar, is this; there the income was charged with the support and maintenance of the husband, his wife and children; and the wife and children being provided for, the husband's creditors might claim the residue; but here the trust goes beyond this, and gives the *use and benefit* of the estate, with its rents and profits, to the son, his wife and children, for life. Thus giving them, as we have seen, an inseparable interest in all, and every part, so that there can be no severance, at least in favor of the pre-existing creditors of the son. See also, 2 Younge & Coll. Rep. 98.

The view we have taken of the rights of Eli T. R. as a member of his own family, are not in my judgment at all weakened by any thing said in Twopeny v. Peyton, 10 Sim.

Rep. 487, and Godden v. Crowhurst, Id. 642. In the former, the testatrix bequeathed the residue of her estate, which was not specifically disposed of, in trust for her nephew for life. By a codicil, after reciting that her nephew had become a bankrupt and insane, she directed the trustees to apply during his life, the whole or such part of the interest of the fund, at such times, in such proportions, and in such manner, for the maintenance and support of her nephew, and for no other purpose whatsoever, as they in their discretion should think most expedient. *The Vice Chancellor held,* that the assignees of the nephew were not entitled to any part of the provision made for him ; that the trust was created for the " special purpose of supporting and maintaining the nephew." It was said that " it would be impossible for the executors to apply the income of the trust fund for the benefit of the nephew generally, or for any purpose beneficial to him, which is not comprehended under the terms maintenance and support. Besides, the executors are not directed to apply the whole of the income of the maintenance and support of the nephew, but only such a proportion of it, as they in their discretion, should think expedient.

In the latter case, the testator bequeathed his residuary estate to trustees; and after making a provision out of it for the benefit of his son for life, and after his son's death, for his wife and children, directed, that if his son should assign or charge the interest to which he was entitled for life, or attempt, or agree to do or commit any act whereby the same or any part thereof, might, if the absolute property thereof was vested in him be forfeited to, or become vested in any person or persons, then the trustees should pay and apply the said interest for the maintenance and support of his son, and any wife and child or children he might have, and for the education of such issue as the trustees should in their discretion think fit. Some years after the testator's death, the son became bankrupt. The *Vice Chancellor* was of opinion that the trust for the benefit of the son, his wife and children, was valid, and that the assignees were not entitled to any part of the provision. In that case it was contended at the bar, that if the assignees were not entitled to the entire share of interest, dividends, &c., it was impossible to hold that they

Rugely & Harrison v. Robinson, et al.

are not entitled to any thing ; as the son is one of the objects of the provision, and no discretion is given to the trustees to apply his moiety of the interest, &c. "for the maintenance and support of him, *or* of his wife, *or* of his children." On the other side it was contended, that the clause could not be so construed as to vest the son's moiety in his assignees, when it was clearly intended to prevent that result. The cases in which the property of a bankrupt had been held to be ineffectually protected from the effects of his bankruptcy, were those in which the property was given for the general benefit of the party ; but in that case the trustees were directed to apply the son's share of the interest, &c. of the trust fund, "for the maintenance and support of him and any wife or children he may have, and for the education of such issue, or any of them, as the trustees in their discretion may think proper." The question was significantly asked, "How is the court to limit the discretion given to the trustee?" It was further said by the *Vice Chancellor*, that there was nothing to invalidate such a gift—"it did not follow that any thing was of necessity to be *paid;* but the property was to be applied ; and there might have been a maintenance of the son, and of the wife, and of the children, without their receiving any money at all. For instance, the trustees might take a house for their lodging, and they might give directions to tradesmen to supply the son, and wife, and the children with all that was necesary for maintenance; and therefore my opinion is, that I am not at liberty to take this as a mere gift for the benefit of the son simply ; but it is a gift for his benefit, in the shape of maintenance and support, of himself jointly with his wife and children. And in this view the whole of the accumulated fund was considered applicable "for the maintenance and support of the son, the wife, and the children, *collectively.*" I have said that these cases do not conflict with any opinion expressed by me in the present case. *Twopenny v. Peyton* indicates in terms more special and precise, the intention of the testator, than does the will we are now called on to consider ; but the language in the case at bar, when tested by the established rules of interpretation is not less significant. In my judgment it most satisfactorily shows, that it was never intended by the father that the property, or the income deriva-

ble from its use or employment should ever vest in the son. The idea that any portion of it should be liable to his debts, we have seen, is explicitly repudiated. The general intent was to provide food and clothing for the son and his wife, and for the maintenance of their chil- dren, including education and incidental charges, and to secure the property with its accumulations to the testa- mentary appointees of the former ; and if no appointment was made, then to the persons entitled under the provisions of the will. If the terms employed by the testator, or any particular intent indicated by the will, is adverse to this gen- eral purpose, they should, if possible, be made to conform to it.

Godden v. Crowhurst bears a still more striking analogy to the case we are considering. Here, as there, the trustee need not have paid any money to the son, but *himself and family* may be supported by the purchase of food and cloth- ing by the trustee, or under his direction. Here, as there, is no gift for the benefit of the son simply, but the property re- mains in the hands of the trustee, until the death of the son, or until it is disposed of as the will directs, and so much of the income as may be proper for the " maintenance and sup- port of the son, the wife, and the children *collectively*."

As this case is one of first impression with us, I will take leave to add another authority to the numerous citations al- ready made. A testator devised to his son an estate, in trust, for the following purposes : " that he shall possess, occupy and manage the same, and conduct and carry on the business there, and to trade, deal, barter, buy and sell in and for all things that pertain to the said estate and its business, or its products, during his natural life ; and out of the profits there- of to make such investments or purchase of other property, real or personal, for the same uses, purposes and trusts, to- wit : for the use of such child or children as the said son shall have at the time of his death ; and if he shall die without issue, then for the use of such person or persons as shall be his heir or heirs at law at the time : giving to the devisee the power to sell the estate, and out of the proceeds thereof to make such other investments, real or personal, or to commence, conduct and carry on such other business for

the benefit of the *cestuis que trust* as he may deem most advantageous; subjecting the estate devised, or its proceeds or investments to such debts only as shall be contracted in the execution of the trust. And in consideration that the son shall and will undertake and continue to execute personally and perform the trusts committed to him, he shall be allowed a reasonable support out of the trust fund for his personal services rendered." The testator then declared his purpose in creating the trust, to be, that the creditors of the son may not deprive him of that bounty, which he thus appropriates for his maintenance : *Held*, that the estate was not subject to execution for the debts of the son contracted previously to the devise. [Ashurst v. Given, 5 Watts & Sergt. Rep. 323.] I have not this volume of Reports before me, but cite from 3 Am. L. Mag. 184, 185—a work, usually so accurate as not to allow us to doubt the correctness of the note. [See also, 7 Watts' R. 547.] In Pennsylvania there is no court that administers justice according to the usual forms of chancery proceedings ; but the courts of law admeasure right to parties with a comprehensive regard to equity, and upon the same enlarged and liberal principles which that forum acknowledges. It must therefore be observed that the case cited, not only lays down what is supposed to be the legal, but the equitable rule also, and if the syllabus of it from which I quoted, is correct, it is a direct authority in favor of the view I have taken.

That a "beneficial" interest in property or its produce, whether the legal estate be vested in a trustee or not, may be charged with the payment of the debts of the proprietor, as a *general proposition*, is a legal truism, which I have not combated either directly or indirectly. I have maintained that in the present case the son has no interest *distinct from his family*, that they are entitled *collectively* to the testator's bounty, that no part of the estate could be separated from the residue, and set apart for his exclusive enjoyment, or devoted by creditors to the payment of debts without a *most palpable violation of the testator's intention*. In the construction of wills, I have shown that the greatest deference is paid to the intention, and a solicitude manifested to discover it. I have further said, that the purpose of the testator stood out in bold

relief, and that it should and could be carried out consistent-
ly with law ; that to do this, it was allowable to transpose
words, to interpret them in a sense not strictly etymological,
and to supply obvious omissions.

That the will might operate in all its parts, it has been
supposed it required no unwarrantable interpretation of terms
to limit the interest of the son in the property, or its increase
to a mere maintenance.    The latitude of expression indulged
by the testator would tolerate this, and to uphold the bequests
the intention most clearly authorises it.    It never was sup-
posed that any portion of the property, or its income, would
be taken from the general mass, so as to diminish it in value;
but if it yielded more than an adequate support for the fami-
ly, the trustee should hold the accumulations under the trusts
of the will.    I cannot doubt the soundness of the view I have
taken—in my apprehension it has its foundation upon un-
questioned and unquestionable legal principles ; best accords
with the rights of *meum* and *tuum*, and is supported by the
purest morals.    With all deference it seems to me that the
opposite conclusion is dictated by an undue sensibility to the
rights of creditors.

Policy demands  that the law should not require the ut-
most exactness in expressing  the intentions of a testator, as
wills are most usually prepared *in extremis*, and in the absence
of professional skill ; and hence it has been always consider-
ed that where the intent was clear, the construction of the
language employed should be subservient to it.    It stimulates
to industry, when we reflect that the earnings of toil and self-
denial can be devoted to the cherished objects of our hope
and affection.    After these earnings can no longer be enjoy-
ed by us, and in anticipation of death, the grave is frequently
rendered less cheerless, by the recollection that we have
placed these objects above the cravings of relentless want, or
the heartlessness of wordly charity.

There is nothing in the record to indicate that the testator
and all who are provided for by his will, were not influenced
by the purest motives, or that either of them contemplated
any thing that it was not only competent, but perhaps a mo-
ral duty of the testator to do.    I cannot therefore lend my
sanction to a rule of construction which I regard as unwar-

rantably strict, merely to assist creditors whose debts were contracted before the will was made.

The conclusions expressed, relieves me from considering the questions which have been raised upon the bankruptcy of E. T. R. Conceding that his discharge is inoperative as against the complainant, and it still follows that his right to the trust estate, and its income, is not such as his creditors can have applied to their debts ; at least such as he had contracted when the will took effect. Without extending this opinion by the consideration of points that cannot influence the result to which it tends, I have but to add as my conclusion, that the decree of the chancellor should be affirmed.

ORMOND, J.—The bequest in this case is, "to my son, William Robinson, in trust for the benefit of my son Eli T. Robinson, but that the same shall not be subject to the payment of any debt he may owe, nor shall the rents and profits of the land, or the hire of the slaves, be applied for the same object, but the same shall be for the use and benefit of the said Eli T. Robinton, and his family, for and during the term of his natural life."

There can be no doubt of the intention of the testator in this bequest. It is clear that he intended his son Eli, and family, should enjoy the property, and that it should be for their exclusive use, and benefit, and should not in any event, be liable to the payment of the debts of Eli, and the only question is, whether it is such a bequest as the law will give effect to ?

I understand the law to be, that no one can have a legal, or equitable right to property, which is not subject to the payment of his debts, either at law or by a proceeding in equity, according to the nature of the case. The terms, "use and benefit," is as precise a designation as can be conceived, to give the entire beneficial interest in property. The beneficiary would have the uncontrolled dominion over the product of the estate, to all intents, and for all purposes, as much so as if he had been invested with the legal title, as well as with the beneficial interest. Such an interest could be sold, and the use or beneficial interest transferred to another ; it results

necessarily that it could be subjected to the payment of the debts of the beneficiary.

If then, this bequest were to Eli alone, it cannot admit of doubt, that it could be subjected to the payment of his debts, and by an act of bankruptcy would pass to his assignee. It is, however, not for his use and benefit alone, but for the use and benefit of himself, and his *family*. It was clearly the intention of the testator, that the "family," by which I understand the wife and children of Eli, should have a joint use in the estate with him. It was clearly competent for the testator to make such a provision for the family of the son, and it is the duty of the court to effectuate this intention, if it can be done without doing violence to any rule of law.

This question has frequently arisen in England, under their bankrupt and insolvent laws, and I apprehend these decisions are exactly in point in this State, where *choses in action*, as well as land, and every conceivable vested interest, legal or equitable, is made subject to the payment of debts. The question generally arises, upon the attempt to provide a fund for life, for a person, in the event of his becoming insolvent, or a bankrupt, by declaring that in such event, the property shall vest in trustees, who shall in their discretion apply the fund to the maintenance of the bankrupt, or to his maintenance jointly with his family. The uniform current of decision has been, that this is a fraud upon the bankrupt or insolvent law, and although the testator might provide, that in case of an attempt by the legatee to alienate the fund, or estate, or of his committing an act of bankruptcy, the estate, or fund, should then go to another, he cannot give him the benefit of it, by placing it in the hands of trustees for his use.

In Green v. Spicer, 1 Russ & M. 395, the testator gave to trustees certain real estate, to receive the rents, profits and issues, upon trust to apply the same, for the board, lodging, maintenance, support and benefit of my son Robert Pinning, at such times, and in such manner as they shall think proper, for and during the term of his natural life—it being my wish that the application of the rents and profits, for the benefit of my said son, may be at the entire discretion of the said John

Spicer, and Daniel Robertson, and that my said son shall not have power to sell, or mortgage, or in any way anticipate, the rents, &c. nnder this my will." The son took the benefit of the act for the relief of insolvent debtors, and the bill was filed by the assignee, on behalf of the creditors for the fund. The master of the rolls held, that the interest of the son passed to the assignees. That the son "took a vested life estate, of which the trustees cannot deprive him by any exercise of their discretion ; they are bound to supply the rents, issues, and profits, for the benefit of Robert Pinning, and their discretion applies only to the manner of the application."

The case of Piercy v. Roberts, 1 M. & K. 4, was of the same description. There an effort was made by a testator, to prevent the estate from going to creditors, by giving it to the executors, "upon trust to pay the same to his son, in such smaller or larger portions, at such time or times, and in sucn way or manner, as they should in their judgment and discretion think best." It would seem that if it was possible, by any form of words, and by the most unlimited discretion over the subject, in the trustee, to secure the fund against creditors, it would have been effected in this instance ; but the court held, "that the insolvent being the only person substantially entitled to the legacy, the attempt to continue him in the enjoyment of it, notwithstanding his insolvency, is in fraud of the law. The discretion of the executors is determined by the insolvency, and the property passed by the assignment."

To the same effect is Snowden v. Dalls, 6 Simons, 524, and many other previous and subsequent cases, for which see the cases cited on the brief.

So far the law is clearly settled, when the insolvent is the sole beneficiary, and as before stated, it could admit of no controversy here, that this property could be subjected to the payment of the debts of Eli, if it was for his sole benefit —a different question is presented, when he is to enjoy the use or benefit of the trust property, jointly with others. As I understand the decisions of the English chancery on this subject, they are, that if a fund is given to trustees for the maintenance and support of the debtor, and his family, if it is

capable of severance, the portion which the husband will be
entitled to, may be subjected by his creditors to the payment
of his debts.

In the very recent case of Kearsley v. Woodcock, 3 Beav.
185, decided in July, 1843, a fund was provided in trust for
A, with a declaration that if A should assign, charge, or oth-
erwise dispose of the fund, or attempt to do so, his interest
should cease and determine, "and the trustees should thence-
forward stand possessed of the fund, in trust to pay, apply,
and dispose of the annual produce thereof for the support and
maintenance of A, and of his wife, and family, or otherwise
for his and their benefit, in such manner as the trustees shall
think proper," &c. A, became a bankrupt, and the assignees
filed their bill, to have the benefit of the fund. The Vice
Chancellor held, "that it was not of necessity that any part of
the trust fund, under such a gift as the present, must be ap-
plicable for the separate benefit of the husband, or father,
who has become bankrupt. The whole property might not
be more than sufficient for the support and maintenance of
the wife and children, and the benefit which the bankrupt
derived from the property might not be capable of severance
—it might be of such a kind, that no definite portion of the
principal, or income, could in respect thereof, be divested from
its application for the benefit of the other members of the
family—suppose for example, the joint occupation of a house,
which was necessary for the habitation of the wife and chil-
dren, the expense of which was not increased by the circum-
stance that it was also the abode of the bankrupt. The de-
cree in this case should be similar to that made by Lord Lang-
dale in Page v. Way." A reference was made to the mas-
ter, to ascertain whether "the income was more than suffi-
cient for the maintenance and support of the wife and chil-
dren, and if so, by how much."

The case of Page v. Way, referred to by the Vice Chan-
cellor, is reported in 3 Beavan 20, and was decided in 1840.
The facts were, that by a settlement made by one Jones, on
his marriage, a part of his freehold and personal property was
conveyed to trustees, in trust, to receive the rents and profits,
and pay and apply the same when received, unto, or for the
maintenance and support of the said F. Jones, his wife and chil-

dren, if any, or otherwise if they should think proper, permit the same to be received by the said Jones, during the term of his natural life." [Then follows a provision against his assigning or charging it.] "And after his decease, to apply the rents and profits to the maintenance of the wife and children," &c. Jones became a bankrupt, and the bill was filed by his assignees.

The master of the rolls held, that as there was no doubt the intention was, the wife should be suported out of the property, so long as the wife and children were maintained by Jones, the trustees had a discretion to give him the whole income, but that it was their duty to see that the wife and children were maintained, and that the assignees took every thing, subject to a proper allowance to the wife and children. A reference was made to the master, to ascertain what portion was necessary for their maintenance.

So in Rippon v. Norton, 2 Beavan, 60, property was settled on J R, until he should take the benefit of the insolvent debtor's act, and then the trustees were to apply it in such manner, and to such persons, for the board, lodging, and subsistence of J R and his family, as the trustees should think proper. J R took the benefit of the insolvent debtors' law, having three children, his wife being dead. The master of the rolls held, that the children were entitled to three-fourths, and the assignees to one-fourth, of the profits of the estate, during the life of J R.

The cases of Twopenny v. Peyton, 10 Sim. 487, and Godden v. Crowhurst, Id. 643, are not irreconcilable with those previously cited. In the first of these cases, the testatrix had given the interest on certain stock in the public funds, to her nephew for life, and afterwards, by codicil, reciting that he had become a bankrupt, and a lunatic, revoked the bequest to him for his life, and bequeathed the same to her executors, upon trust during the life of the nephew, "to apply the whole, or such part of such interest, or annual proceeds, at such time, or times, and in such manner, for the maintenance, and support of my said nephew, and for no other purpose whatever." The Vice Chancellor held, that this case was distinguishable from the cases previously determined and here cited, because here, the clear intention was, that the lu-

natic was to have only a maintenance and support, and no other beneficial interest under the will; and that the executors had no discretion to apply the fund in any other manner. He says "In my opinion therefore, it would be impossible for the executors to apply the income of the trust fund for the benefit of the nephew generally, or for any purpose beneficial to him, which is not comprehended under the term, "maintenance and support." Besides, the executors are not directed to apply the whole of the income for the maintenance and support of the nephew, but only such a proportion of it, as they in their discretion should think expedient. I am therefore of opinion, that in this case, a trust is created for the more special purpose of supporting and maintaining the nephew and under such a trust, the assignee cannot take any interest."

The point upon which this case turned is very evident; it is, that the lunatic, by the terms of the will, took no benefit whatever under it, except for maintenance and support.

The legacy in the case of Godden v. Crowhurst, was, that the trustees should apply the "interest, dividends, and accumulations, for the maintenance, and support of my said son, and any wife and child, or children, he may have, and for the education of such issue, or any of them, as they my trustees for the time being, shall in their discretion think fit." The Vice Chancellor held that the interest of the son would not pass to the assignees, because it was given collectively to the son, the wife, and the children. That it was not a gift to the benefit of the son simply, but a gift in the shape of maintenance, and support, of himself, his wife and children, the point upon which this case turned, is evidently, that as the fund was given for the support of the family, it was not divisible so as to ascertain the share of the husband. Thus the Vice Chancellor says, "It does not follow that any thing was of necessity to be *paid*; but the property was to be applied, and there might have been a maintenance of the son, and of the wife, and of the children, without their receiving any money at all. For instance, the trustees might take a house for their lodging, and they might give direction to tradesmen to supply the son, and the wife, and the children, with all that was necessary for their maintenance."

Rugely & Harrison v. Robinson, et al.

In my opinion this case is not reconcilable with either the previous, or subsequent English cases. Be that however as it may, it is clear it was not intended to overrule them, or disturb the cardinal principle which pervades them all—those subsequent as well as previous to this—that when the debtor takes a beneficial interest under the will, it is liable to the payment of his debts. The extent of the principle, is shown by the facts put by the Vice Chancellor in the case last cited— that the trustee might take a house, employ tradesmen to furnish the necessary provisions for the family, &c., and as the family of the son were jointly concerned with him in the use and enjoyment, no particular part could be designated as belonging to him individually, &c. But the case at bar is wholly unlike that; it is not a fund placed in the hands of the trustee, to be employed at his discretion, for the maintenance of the family, but it is given to him in trust for the *use and benefit* of the son, and his family. In the case last cited, the Vice Chancellor says, it does not follow that any thing was of necessity to be paid to the debtor. In this case, that does follow necessarily, and that upon the doctrine even of this case is a decisive test. It is indeed made the turning point of that case, differing as I think it does in principle from the other cases. If in the case before us, the trustee was to pursue the course supposed by the Vice Chancellor, and instead of permitting the beneficiary to have the avails of the trust fund, was to retain it in his own hands, and dole out to them at his discretion, the means of support, and subsistence, the *cestui que trusts* might say to him, this fund is not placed in your hands for our maintenance and support, but for our *use and benefit*, and I think it is too clear for argument, that the trustee would not be permitted thus to control, and limit the application of a fund, which in the broadest terms, is declared to be for the use and benefit of the debtor and his family.

I have not considered it necessary, or proper, to examine those cases, where in the event of the attempt to alienate, or of the insolvency, or bankruptcy, of the legatee, or donee, the trustees are required to preserve the accumulations of the property beyond what might be necessary for the mainte-

93

nance of the bankrupt and his family, because, in my judgment, there is no ground for putting such a construction upon this will. No part of it in my opinion can be so construed without doing violence, both to the letter, and the evident design of the testator, which was to give his son, the use and benefit of the property, without its being subject to the payment of his debts ; and at the same time to secure to the family of the son a support and maintenance. The idea that all over what was necessary for the support and maintenance of the son, and family, was to accumulate in the hands of the trustee for the benefit of the heirs of the son, does not appear to have entered into the mind of the testator. How it may be asked, could such an intention consist with his declaration, that the son was to have the use and benefit of the entire estate ?

The effect of these decisions, in my opinion, is, that a beneficial interest cannot be given to one, so that it cannot be reached by his creditors, unless such interest is conferred, and is to be enjoyed jointly with others, and is also incapable of severance ; if such interest can be severed, the creditor is entitled to the interest of the debtor. They command my entire approbation.

In my opinion, ingenuity cannot devise a plan by which one can have the use and benefit of property, (with the exception of a joint use not capable of severance,) in defiance of his creditors. No matter what guise it may assume, whether it is in the shape of a maintenance in the discretion of trustees ; or whether, as in this case, it is openly avowed to be for his use and benefit, in every conceivable case, where he takes a beneficial interest, it may be subjected to the payment of his debts.

And indeed from the reason and nature of the thing, there could be no middle ground. If it were admitted that the discretion of the trustee to give, or withhold the bounty of the testator, was sufficient to bar the claims of creditors, the debtor would, by the substitution of a few words, be placed beyond the reach of his creditors, whilst to all practical purposes, he would be the owner of the estate. Here however, I must again repeat no discretion whatever is given to the trustee; he merely holds the legal title " for the use and benefit

of the debtor, and his family." They are therefore entitled to its enjoyment, and for all purposes, except the right of alienation, the owners of the estate.

To apply these principles to this case. So far as this bequest includes property, which is intended to be used jointly by Eli and his family, in specie, as a house, furniture, household servants, &c., it is incapable of severance, and cannot be reached by his creditors. So far as it consists of other property, from which a revenue is to be derived by its employment, an account must be taken.

If the provision in this case, was for the maintenance and support of Eli and his family, I am clear in the opinion, that all that portion of the revenue of the property, which was not necessary to the support of the family, exclusive of the husband, would belong to the creditors. But the language of this bequest is, for the use and benefit of Eli and his family, and it would seem not an unreasonable interpretation of the bequest, that the family had an interest in the revenue, beyond what may be necessary for their support. My brother GOLDTHWAITE thinks, that Eli, and his family, take equal parts in the product of the estate. I yield my opinion to this construction, and an account must accordingly be taken, and the share of Eli in the nett product be subjected to the payment of the particular creditor filing the bill, or the assignee in bankruptcy, as may hereafter be determined.

I have considered this, as it doubtless is, a case of the first importance, not only to the parties to the suit, but as it respects the principle now to be settled. I have given it the best consideration I am able, and feel a thorough conviction that my conclusion is sustained by the adjudged cases, is in strict conformity with the policy of our law, and demanded by the highest interests of the community.

GOLDTHWAITE, J.—1. Before expressing my individual opinion upon the main point, it will be proper to consider the one on which the opinion of the court below is based. The bill was dismissed under the impression this court had settled, in McDougald v. Reid, 5 Ala. Rep. 810, that the *lien* created by a judgment was destroyed by the debtor's discharge under the bankrupt act. In this the chancellor mis-

apprehended the extent of that decision, which only went to the quashing of an execution issued and levied on personal property, subsequent to the discharge of the bankrupt, and the case, in point of fact, involved no question of lien. It has not been seriously urged here, that the decree dismising the bill can be sustained on the reason assigned by the court below, but it is insisted it should not be reversed, as the bill for several other reasons is said to be defective, and the duty is assigned to me, by the other members of the court, to notice and express the judgment of the court upon them.

2. It is urged that no proper foundation is laid in the bill for equitable interference, because the executions on the judgments at law were never issued except to the county of Montgomery, and these long anterior to the equitable interests, which are now sought to be subjected.

The rule is admitted, that a bill of this nature is defective without showing that legal process has been resorted to, and that such has not been effectual. This is necessary, because otherwise, no reason is shown for the peculiar interference of equity, and without this statement it cannot appear that the process of the common law court would not, in itself, be sufficient for the relief of the party. But we are not aware that any thing more is necessary to confer jurisdiction, or that it is incumbent on the plaintiff to show an attempt to enforce the judgment by execution, after the equitable interests sought to be subjected have been created.

3. Another objection is, that the assignee in bankruptcy, of the defendant, Eli T. Robinson, became a necessary party to this bill, as soon as the court was informed that the interest sought to be charged was vested in him, in consequence of the bankruptcy of that defendant. By the terms of the bankrupt act, all property, and rights of property, of the bankrupt vested immediately, and by operation of law, in the assignee, upon the party being declared a bankrupt, and we do not well perceive how any effectual proceedings with respect to the estate of a bankrupt, whether legal or equitable, can be had, unless the assignee is a party to the suit. The authorities leave it a more doubtful question, whether the bankrupt can be joined in a suit to discover and subject his assets, than that the assignee cannot. [Story Eq. Pl. 233; Whit-

Rugely & Harrison v. Robinson, et al.

worth v. Davis, 1 Ves. & B. 545; Barfield v. Solomons, 9 Ves. 77; Mitford, 161.] We are clear in the opinion, the assignee is a necessary party to a suit like this, for the reason that the title to the property sought to be made subject, is vested in him, and can only be affected when he has the opportunity to be heard. What his rights are, as the representative of the creditors, we decline at this time to ascertain, as he is entitled to be heard before these can be concluded. For the same reason we decline any expression of opinion as to the rights of other creditors, in connection or otherwise, with the complainants.

4. Conceding the necessity of making the assignee a party before a decree upon the merits of the bill, it seems to us a reversal cannot be avoided, for the omission to make him a party. The chancellor should have allowed the bill to stand over for this purpose, according to the course of chancery practice. [Story Eq. Pl. § 541, and cases there cited; Lucas v. Bank of Darien, 2 Stew. 281, opinion of Collier, J.; 1 Barbour Ch. Pr. 321, and cases there cited.]

5. On the main question, my individual opinion is, that the bill contains equity. I think the intention of the testator is evident, that his son Eli is to have a beneficial use of the estate devised in trust; and it appears to me equally evident this use was intended by the testator, to be free from disturbance by creditors. I am not aware of any legal rules which will permit this latter intention to be carried into effect, for I hold it to be entirely clear, that whatever a debtor can himself claim to enjoy as a general use, benefit, or interest, in property capable of separation and division, may be reached by his creditors. Whether a mere right of sustenance, or a *corody* falls within this idea, need not now be discussed, for I do not conceive such is the present case. The difficulty here is, to ascertain what use is given to the son, for I apprehend there may be cases where the use of a specific chattel given to many, is not capable of division and separation. Such possibly may be the fact when the servitude of slaves is given for the personal convenience of more than one, and one of the usees is a bankrupt. Without however speculating on cases which may arise, it is sufficient to examine if such is the case before us. If the slaves specifically bequeathed are

house servants, the fact that they are so, does not appear from the will, nor can we know from that whether the lands devised constitute the residence or homestead of the family of the son. It may be important hereafter to ascertain the existence of these facts, in order to determine the precise intention of the testator *quoad* the use or benefit to be had by the family of the son, in this property.

6. With respect to the general bequest, it seems clear to me, the testator intended the property, for the term of five years, should be managed by the executors for the common benefit of all the *cestuis que trust*, and that an annual division should be made of the profits, after which time the estate itself was to be divided. With regard to the portion to be allotted to Eli and his family, to me it is free from doubt, his family was intended by the testator to be the object of his provision *as a family*. In this aspect of the case, the testator has omitted to designate the proportions in which the different members of the family shall be interested in the uses of the estate, and it seems to me there is an obvious propriety, if not an absolute necessity, for holding all to be equally entitled to share in the annual profits during the lifetime of the son. I cannot distinguish this case in principle from that of Rippon v. Norton, 2 Beav. 63, where the trust created *for the board, lodging and subsistence of an insolvent debtor, and his family as the trustees should think proper*, and in which it was held, the insolvent debtor, and each member of his family were entitled to *equal shares* of the profits of the trust estate, although the portion coming to the debtor, after the division, was held chargeable by his creditors.

Great stress has been laid on the decisions of Twopenny v. Peyton, 10 Simons, 48, and Godden v. Crowhurst, 16 E. Con. Ch. Rep. 642, in sustaining the trust estate against the claims of the creditors, and therefore I think proper to state my impression of the difference between them and this case. In the first, the testatrix declares her intention that the trust estate shall be applied solely for and towards the maintenance and support of her nephew, during his life, and then devises the estate to a trustee, to apply the whole, or such part of such interest, or annual produce, at such time or times, in proportions, and in such manner, for the *maintenance and*

*support* of the nephew, *and for no other purposes*, as the trustees in their discretion think most expedient. This was sustained against the creditors, for the reason, that *nothing more than a support and maintenance* was provided, and because the trustees could not apply the proceeds for the *general benefit* of the nephew, or for any purpose beneficial to him, which is not comprehended under the terms maintenance and support.

In the other case, the will declared the trust, in the first instance, for the benefit of the son of the testator, but provided if he should do, or commit any act whereby the trust fund, or any part of it could, if the absolute property was vested in him, become forfeited or vested in any other person, then the trustees should thenceforth pay and apply the trust funds for the maintenance and support of the son, and any wife and child, or children he might have, and for the education of such issue, or any of 'them, as the trustees for the time being, should in their discretion think fit. This was sustained against creditors, on the ground that the provision was only for the maintenance and support of the son and his family. The Vice Chancellor, (Sir L. Shadwell,) expressly put it, that he was not at liberty to take the bequest as a mere gift for the benefit of the son simply, but it was a gift for his benefit in the shape of maintenance and support of himself, jointly with his wife and children. In the case before us, the property is to be held by the truetee for the use and benefit of the son and his family, and as there are no terms to restrict this use and benefit, it must be general and independent of a mere support and maintenance—thus creating the precise distinction pointed out in each of the cases cited. It is this distinction which most probably induced a different determination in Rippon v Norton, previously cited, where the terms *board, lodging and subsistence*, are used, instead of support and maintenance. The direction of the will before us cannot be satisfied with the mere maintenance and support, either of the son or his family, but in my judgment clearly indicates the intention of the testator, that his son and family should have a general use, in despite of his creditors.

I conclude then, that as to the portion of the testator's estate to be divided and set apart for the use of Eli and his

family, that it is capable of separation and division—being so, it is liable to be subjected to the claims of his creditors, and passed to [his assignee under the decree of bankruptcy.

But as this trust is created by the will, it seems to me that it must continue as a trust for the family, and the yearly profits alone are capable of division. It seems evident also, that the share of Eli in this trust fund is subject to increase or diminish, as his family may enlarge, or the reverse, and that when that is made subject to the creditors, it must be taken subject to the same fluctuation.

7. With respect to the lands and slaves specifically devised and bequeathed, although the *prima facie* intendment is, that all property of which a use is given, may be. so disposed of for money as to make a joint use capable of division, or when the profits of a chattel are given and the chattel itself is to be kept for another, yet I am satisfied, in view of our peculiar institutions, that the bequest of a joint use of family slaves to the members of a family, *as a family,* involves the idea of a *personal* use, which is incapable of separation or division, and I think the same rule must obtain when a homestead or family residence is given to many, *as a family.* I do not deem it important now to go at large into reasons which induce this conclusion, but they are founded chiefly on the circumstance that the family relation must be preserved, whether the head of it is insolvent or otherwise, and there is no reason why the innocent members of the family shall be deprived of the personal use of a chattel, or of the residence given for their comfort or convenience, because another member of the same family interested in the same personal use, is unable to pay his debts. His use, under such circumstances is not capable of separation or division, and therefore cannot be seized by the creditor.

I conclude then, with expressing the judgment of a majority of the court, that the decree of the chancellor be reversed and the opinion of the entire court, that the cause be remanded for the purpose of making the assignee of Eli Robinson, as well as other necessary persons parties, to the proceedings by an amendment to the bill, and for such further and other proceedings as shall not be inconsistent with the opinions of the majority of the court as previously expressed.

On a petition for a re-hearing, the court pronounced the following opinion :

PER CURIAM.—We have considered the petition for a re-hearing, and think it should be denied.

It will be remembered the bankruptcy of the defendant, Eli Robinson, is not disclosed by the bill, and the complainants, by the allegations therein contained, made a case for equitable jurisdiction. In this condition of the cause, it is clear there is no reason to sustain the demurrers, either generally, because there is no equity in the bill, or for any of the special causes set up by the answers.

There is no ground to urge that a demurrer will reach a case, disclosed for the first time in the cause by the answers, whether of one or all the defendants.

The cause was heard in the court below on the bill and answers, and as there was no denial of the equity of the bill contained in either of them, in the estimation of a majority of this court, the only matter to warrant the dismissal of the bill, was the bankruptcy of the defendant, Eli T. Robinson. The disclosure of this fact did not destroy the equity of the complainants to proceed against the equitable estate, and in our judgment went only to the personal discharge of the defendant asserting it. If the defence had been sustained by the chancellor on this ground it might have been necessary to amend the bill, to prevent its dismissal in consequence of the necessity afterwards to introduce new parties, and very possibly too, new and distinct allegations, but instead of a decision which would allow the amendment, the whole foundation of the bill was swept away by the declaration that no lien whatever existed on the bankrupt's estate.

It will be seen that no objection is taken to the bill, that proper parties are not made, and when the necessity for such parties becomes apparent, by ascertaining the fact of bankruptcy, there is no sound reason why the case should not stand over, in order to make them in this as well as in other causes. It is said, if the objection for want of parties, is not taken until the hearing, the complainant will be allowed a reasonable time to bring the proper parties before the court,

94

by an amendment of the bill, or by a supplemental bill, unless it should appear the necessary parties are omitted in the bill, by the fraudulent or wilful omission, or the bad faith of the complainant. [1 Barbour's Chan. Prac. 215, and cases there cited.] So too, with respect to the charge of fraud and collusion, which the defendants insist are necessary, when the assignee is made a party, if the concession is made that the allegation is important, even such an amendment has been allowed at the hearing. [3 P. Wms. 144; Pack v. Lord Clinton, 12 Vesey, 63.]

It may be assumed that whenever the substantial equity of a bill is not controverted at the hearing, and it then becomes apparent the cause cannot proceed without other parties, the bill should not be dismissed, but should stand over to allow them to be made. It is a mistake to suppose, in the present case, that the introduction of the assignee would be to make a new case. The relief sought would still be the same, and against the same property, although the interest of others, in the relief or the property, became apparent only at the hearing. It may well be questioned whether, at the hearing or after a decree, an amendment would be allowed, when its effect is to make a new case. [Denniston v. Little, 2 Sch. & Lef. 11 n.]

After all the consideration we can give this case, we are satisfied the decree previously pronounced must stand.

COLLIER, C. J.—I shall not now undertake to decide whether the bill will present a case to authorize the relief which my brethren suppose to be proper, even when other parties are made. The law being ruled against my views of the parties' rights, I will not dissent from the order remanding the cause, that it may be thus amended. I incline to think that there should be no amendment allowed that will make a new case, but I reserve all other questions than that of making another party, for further consideration, should it be necessary.