McLEAN (MINER v.). See Case No. 9,630.

---

## Case No. 8,891.

### McLEAN v. ROCKEY et al.

[3 McLean, 235;[1] 1 West. Law J. 300.]

Circuit Court, D. Ohio. July Term, 1843.

BANKRUPTCY—ASSIGNEE — WHEN RIGHTS ATTACH—JUDGMENT OBTAINED BEFORE PETITION—LEASE FOR NINETY-NINE YEARS—JUDGMENTS AT SAME TERM.

1. From the time of filing a bankrupt's petition, the right of the bankrupt, by relation, is vested in his assignee. And no subsequent lien created by the bankrupt, or by a judgment, can be valid.

[Cited in Phelps v. Sellick, Case No. 11,079.]

2. But a judgment obtained before the petition was filed, having been obtained bona fide, is a lien within the second section of the bankrupt law [of 1841 (5 Stat. 440)].

[Cited in Clarke v. Rist, Case No. 2,861.]

3. A lease for ninety-nine years, renewable forever, by the common law is only a chattel.

4. A judgment binds the real estate of the defendant, from the first day of the term at which it was rendered.

5. Under the construction of the Ohio statute, by the supreme court of the state, a permanent leasehold estate is land, within the execution law, and is bound by a judgment.

6. All judgments rendered at the same term have equal liens, on the real estate of the defendant, however the executions may have been issued and levied, provided the levy has been within a year from the rendition of the judgment.

7. Where there is no allegation of fraud in the bill, and the liens will more than absorb the property of the bankrupt, there is no reason why this court should exercise jurisdiction.

[Cited in Re Bowie, Case No. 1,728; Re Hufnagel, Id. 6,837; Kimberling v. Hartly, 1 Fed. 575.]

In bankruptcy.

Mr. Worthington, Mr. Brown and N. C. McLean, for complainant.

Storer, Chase & Van Metre, for defendants.

OPINION OF THE COURT. On the 8th November, 1842, Coffin filed his petition under the bankrupt law, and on the 3d of February ensuing he obtained a decree of bankruptcy. On the 25th of June, 1839, he pro-

[1] [Reported by Hon. John McLean, Circuit Justice.]

cured a leasehold estate of ninety-nine years renewable forever. At October term, 1842, the following judgments were entered against him. In favor of Henry Rockey, for $199.64; Springer & Whiteman, for $675.50; Matthias Roosa, for $712.87. The court commenced its session the 3d of October, and adjourned the 7th of December. On Roosa's judgment execution was issued the 21st of October, and was levied upon the leasehold premises the 14th of November, 1842. The execution was issued on Rockey's judgment the 22d of October, and on Springer & Whiteman's judgment, execution was levied, as the above levies were made, on the leasehold property the 17th of November. The Northern Bank of Kentucky, at the same term obtained judgment for $2,049.32, on which an execution was issued within the year, which was levied on the same premises. At January term, 1843, of the superior court of Cincinnati, Marriott & Hardesty obtained a judgment for $668.72, on which an execution was levied on the leasehold property the 21st of the same month. As the above levies were all made subsequently to the time the bankrupt filed his bill, his assignee insists, that under the bankrupt law, the leasehold estate is vested in him, and he prays an injunction, &c.

Several questions have been raised and discussed, which will now be considered.

At common law a leasehold is only a chattel interest, and it is contended that it is nothing more under our statute. The 2d section of the act concerning "judgments and executions" (Swan & C. St. 468) declares that "the lands and tenements of the debtor shall be bound for the satisfaction of the judgment against such debtor, from the first day of the term at which judgment shall be rendered." Lands out of the county, and goods and chattels, are bound from the time execution shall be levied. The October term, at which all the above judgments were rendered, except one, commenced on the third day of October, so that unless the leasehold estate can be considered "lands and tenements" within the statute, and bound by the judgment, there is no lien paramount to the right of an assignee. By relation, his right to all the estate of the bankrupt, commenced from the filing of the bankrupt's petition.

The bankrupt from the time his petition is filed, is civiliter mortuus, "as to all suits at law or equity pending, in which he is a party" [Ex parte Foster, Case No. 4,960]; and that consequently, after that time, no judgment could be recovered against him. That the court will inquire whether in fact the judgment was not entered after the petition was filed; and if so, will treat the judgment, as of no more validity than if entered against a deceased person. So far as regards the disposition of his property, or the control of suits pending against him, the bankrupt, from the time his petition is filed, may

be considered as civiliter mortuus. But the suits are not abated, and should be prosecuted to judgment, against the bankrupt. 1 Term R. 463; 3 Term R. 437; 15 East, 622. Whether the judgments, therefore, were entered before or after the petition was filed, is of no importance. The legislature of the state have an undoubted right to say, as is declared in the above act, that a judgment shall be a lien on lands and tenements from the first day of the term at which it was rendered. The important question is, whether the above leasehold estate was bound by the judgment. That a judgment constitutes a lien on real estate, which is recognized in the second section of the bankrupt law, is undisputed. And there is no allegation in the bill, that either in the causes of action, or in the prosecution of the above suits to judgment, there was fraud. The judgments therefore having been rendered against the bankrupt before his petition was filed, create a valid lien on his real estate. But if the leasehold property be not "lands and tenements," within the statute, there can be no judgment lien.

The act of January 29th, 1821 (Swan & C. St. 289, note), declared, "that all lands of whatever description, held by permanent leases, shall, in cases of judgments had and executions levied thereon, be considered as real estate; and the officer levying the execution or executions, shall conform to, and be governed by the provisions of the several acts regulating judgments and executions." &c. This act continued in force until the act of the 22d of March, 1837, (Swan & C. St. 289, note), which provided that leasehold estates renewable forever, should descend as estates of inheritance. And that law was repealed by the act of the 5th March, 1839, which contains a similar provision. The act of 1821 declared, that in case of judgment and an execution levied upon a permanent leasehold estate, it should be considered as real estate; and the officer was bound to conform to the law regulating sales of real estate on execution. Prior to this act, as the supreme court of Ohio say, in the case of Reynolds v. Commissioners of Stark Co. (5 Ohio, 204), that "a lease is personal property. Although the lease contains a stipulation, that it shall be renewable forever; yet any estate short of freehold gives the heir no interest." And it would seem that the act of 1821, in this respect has made no alteration in the law. It only provides that where a judgment has been obtained, and an execution shall be levied on a permanent leasehold estate, it shall be considered as real estate, and sold as such. In other words, such an estate shall be subject to valuation, and must be sold, if improved, for two-thirds of its value. This it is supposed is the extent to which the above act can affect permanent leases. But the acts of 1837 and of 1839, above cited, provided that a permanent leasehold estate should descend as land. This innovation, it would

seem, should not change the nature of such an estate beyond the express words of the statute. It would not subject such an estate to the lien of a judgment. In Kentucky, by an express statute, negroes descend as real estate, and yet this does not make negroes land. The same quality, at the legislative discretion, may be imparted to any other personal property; but that would not change the nature or legal designation of such property, beyond the words of the statute. It does not make negroes in Kentucky, lands and tenements, any more than the acts of 1837 and 1839 make a leasehold estate, renewable forever, lands and tenements within the statute, subject to a judgment lien.

In the case of Murdock v. Ratcliff, 7 Ohio, 119, the court say in regard to a lease upon an annual rent, for ninety-nine years, renewable forever, "We know that such interests are usually treated as fees simple by the holders, and that the law requires them to be appraised as real estate in sales under execution; and that by statute they are liable to dower, &c.; but no proposition has been better settled, from the earliest days of the common law, than that a lease, of whatever duration, is but a chattel." But in Loring v. Melenda, 11 Ohio, 355, a different view has been taken of this question. The court there held that "permanent leasehold estates, are lands, subject to all the rules and laws which attach to land, for all purposes, and that judgment liens attach to them as lands." And they say that the point thus decided was fairly presented in the case, and "that it was the point upon which the case was reserved." This being the construction of a statute which makes a judgment a lien on lands, &c., it is conclusive of the point. We take as a rule of decision the construction of a statute by the supreme court of the state. The four judgments, first above named, must, therefore, be considered a lien on the leasehold estate in question, from the 3d day of October, 1842, which was the first day of the term.

It is contended, however, that as no execution was issued on the judgment in favor of the Northern Bank of Kentucky, until after execution had been issued and levied, on the judgment in favor of Marriott & Hardesty, entered at January term, 1843, of the superior court, that the lien of the Northern Bank is postponed in favor of the subsequent judgment. This must depend upon the construction of the statute.

The fourth section of the execution law, (Swan & C. St. 470) provides that "when two or more writs of execution against the same debtor, shall be sued out during the term in which judgment was rendered, or within ten days thereafter, and when two or more writs of execution against the same debtor, shall be delivered to the officer on the same day, no preference shall be given to either of such writs," &c. "In all other cases, the execution first delivered to the officer shall be first satisfied." "Provided,

nothing herein contained, shall be so construed as to affect any preferable lien, which one or more of the judgments, on which such executions issued, may have on the lands of the judgment debtor." The twelfth section of the same act declares that "unless execution shall be taken out and levied within twelve months after its rendition, it shall not operate as a lien on the estate of any debtor, to the prejudice of any other bona fide judgment creditor." In Patton v. Sheriff, 2 Ohio, 395; Waymire v. Staley, 3 Ohio, 366; Riddle v. Bryan, 5 Ohio, 52, it is laid down generally that in the above fourth section "the legislature intended to provide for three classes of cases:" (1) "Where there are two or more judgment creditors, having equal rights, and where there is no priority of lien, as where judgments are recovered in the same term." (2) "In cases where judgments do not operate as a lien, but the property is bound only from the time when seized in execution, as goods and chattels and lands not situated in the county where the judgment is recovered." And (3) "for cases where the creditor in consequence of not having an execution levied within one year from the date of his judgment, has lost the benefit of his lien, so far as that it shall not operate to the prejudice of any other bona fide judgment creditor.".

From the above cases it appears that a judgment lien remains in full force, if execution be issued and levied within the year, as was done in the case of the Northern Bank.

As there is no allegation of fraud in the bill, and as the judgments will absorb the whole of the leasehold estate, and leave no surplus for the general creditors, there seems to be no reason why this court should take any further jurisdiction in the case. The bill is, therefore, dismissed at the complainant's costs.