RUGELY & HARRISON *vs.* ROBINSON *et al.*

R. & H. filed their bill in equity against E. T. R. and W. R., seeking
to condemn to the satisfaction of a judgment at law, which they had
obtained against the said E. T. R., (on which judgment an execution
had been issued and returned "No property found,") his interest in
certain lands and slaves which had been bequeathed by his father
to W. R., "to have and to hold the same in trust for the benefit of
E. T. R., but the same shall not be subject to the payment of any
debt that he may owe, nor shall the rents and profits of the land or
the hire of the slaves be applied for the same object, but the same

shall be held for the use and benefit of the said E. T. R. and his family, during the term of his natural life, and from and after his death to the use of such persons as the same may be devised and bequeathed by the said E. T. R. in his will; and in the event no will shall be made, then to the heirs at law of the said E. T. R." The defendant insisted that he did not have such an interest in the property bequeathed as could be subjected to the payment of his debts, and also relied on his discharge under the Bankrupt Act, obtained subsequently to the rendition of the judgment against him. R. & H. did not prove their claim in the Bankrupt Court against E. T. R., nor was his interest in the trust property surrendered in his schedule by E. T R. The Chancellor dismissed the bill, but the Appellate Court reversed his decree, and held that the interest of E. T. R. in that portion of the property from the employment of which a revenue was to be derived was capable of separation by an account ascertaining his share in the nett product, and that such share, when so ascertained, was liable to be subjected to the payment of his debts. The cause was remanded, that an account might be taken, and that other parties might be added. The bill was amended by making the wife and children of E. T. R., and also the assignee in bankruptcy, parties defendants, It was proved, *inter alia*, that after the testator had made his said will, he verbally requested W. R. to give to said E. T. R. a certain warehouse and ten acres of land; that W. R afterwards refused to comply with this request, but permitted E. T. R. to rent out the property and receive the rent for three or four years; that T., to whom the property was rented for one year, executed his note for the rent payable to W. R., together with a mortgage on two slaves, to secure its payment; that the slaves were sold under the mortgage, and purchased by W. R. in his own name, and were afterwards delivered by him to E. T. R.; that E. T. R. had purchased three negroes from W. R., which were to be paid for out of the trust estate, but the purchase money had not been paid. W. R. claimed to have a mortgage on said three negroes for the payment of the purchase money, but no proof was made relative to it. *It was held*—

1. That the correctness of the former decision of the Appellate Court could not be questioned, either by the assignee in bankruptcy or by the wife and children of E. T. R., inasmuch as the former was not injured by said decision, and the interest of the latter was fully represented before the court at that time by the trustee.

2. That the amendment only put in issue such facts as would avoid the discharge in bankruptcy, which the original defendants had set up, or show that it did not operate on the property sought to be condemned, and was therefore not obnoxious to the objection of making a new case different from that presented by the original bill.

Rugely & Harrison v. Robinson.

3. That the legal title to the slaves purchased under the mortgage did not vest in E. T. R. until the delivery to him, and until that time he did not have such a beneficial interest in them as could be subjected by his creditors, at law or in equity, to the satisfaction of their demands.

4. That the omission of E. T. R. to include in his schedule his interest in the trust property, thus bequeathed by his father, was not such a fraud or wilful concealment as would vacate *in toto* his certificate of discharge as a bankrupt.

5. That a charge in the bill that the failure of E. T. R. to surrender in his schedule his interest in the trust property *amounted in law to* a fraud which should vacate his discharge, was not equivalent to a charge of fraud or wilful concealment of his property.

6. That although it is a general rule, that to enable the creditor of a bankrupt to maintain a suit in equity to subject *to the satisfaction* of his debt property belonging to the bankrupt, he must allege in his bill some collusion between the assignee and the debtor, or that the assignee refuses to bring suit, yet when the assignee has neglected for more than five years to institute proceedings to obtain the condemnation of the bankrupt's interest in certain trust property, and in the meantime a creditor has ferreted out that interest, and after a protracted litigation, obtained a decree subjecting it to the satisfaction of his debt, the assignee will be presumed to have abandoned his claim, and he cannot assert it against such creditor.

7. The assignee having no claim to the property which he could assert against the complainants, none of the other defendants could take advantage of E. T. R.'s discharge under the Bankrupt Act.

8. That the State courts have jurisdiction of the case established by the bill, answers and evidence. The rules of interpretation which obtain in the Federal courts as to the construction of the Bankrupt Act will be applied by the State courts.

9. That W. R. and E. T. R. having admitted in their answers the due issuance and return of the execution against E. T. R., an objection to the sufficiency of the return could not afterwards be raised, either by them or any of the other defendants.

10. That a defendant cannot raise the objection that an execution was not sent to the county of his residence, unless he shows that he had visible property in that county which was liable to its satisfaction.

11. That the other creditors of E. T. R. were not necessary parties.

12. That it was not necessary or proper, in stating the account, that any allowance should be reported for the family of E. T. R.

13. That E. T. R. was not entitled to compensation for his services

Rugely & Harrison v. Robinson.

in superintending the trust estate, no such claim having been set up in his answer, and no proof made before the master of any contract between him and trustee for such compensation.

14. That the three negroes which were purchased from W. R. by E. T. R. were properly taken into the estimate in stating the account.

ERROR to the Chancery Court of Lowndes. Tried before the Hon. J. W. Lesesne.

This case was before the Supreme Court at the June Term 1846, and is reported in 10 Ala. 702. Rugely & Harrison, the complainants, had obtained a judgment at law in 1836 against Eli T. Robinson and Edward Couch, on which an execution had been regularly issued and returned "No property found." In 1844 they filed their bill in equity against Eli T. Robinson and William Robinson, seeking to condemn to the satisfaction of their judgment Eli's interest in certain property, consisting of lands, negroes and other personal property, which had been bequeathed by his father, Tod Robinson, to William in trust for Eli. The language of the clause is as follows, viz : " I give and bequeath unto my son William Robinson, and his heirs, all that tract of land," &c., (here follows a description of the property,) "to have and to hold the same in trust for the benefit of my son Eli Robinson ; but the same shall not be liable for the payment of any debt that he may owe, nor shall the rents and profits of the lands or the hire of the slaves be applied for the same object ; but the same shall be held for the use and benefit of the said Eli T. Robinson and his family during the term of the said Eli's natural life, and from and after his death to the use of such persons as the same may be devised and bequeathed by the said Eli T. Robinson in his will ; and in the event no will shall be made, then to the heirs at law of the said Eli." The defendant in his answer, among other things, set up his discharge under the Bankrupt law, obtained in 1843. The Chancellor dismissed the bill, but his decree was reversed by the Supreme Court, and the cause remanded, that an account might be taken to ascertain the share of Eli in the nett product of the trust property from the employment of which a revenue was to be derived, and also to bring in the assignee in bankruptcy, and the wife and children of Eli. The account was taken accordingly, and the necessary parties added, and the cause now comes back to the Supreme Court on

cross assignments of error by the complainants, and the several defendants. The errors assigned, and the points raised by each party, appear in the briefs, and in the opinion of the court.

SAFFOLD for Rugely & Harrison :

1. Is the former decision of this case by the Supreme Court binding on the wife and children of Eli T. Robinson and the assignee in bankruptcy ? The amendment does not make a new case. It is founded on the allegations of the answer, and the new defendants set up no new defence. The interest of the assignee consists in having the property condemned, and the interest of the wife and children was fully represented and protected before the court.—10 Ala. 702; 4 S. & P. 62; 1 Por. 321; 1 Wheat. 304; 2 A. K. Marsh. 353; 7 Wheat. 58; 12 Pet. 488; 3 How. 413; see also Ram on Judgments, 53, 127-28-29, 134, 137; 1 Wm. Black. 264; 3 Bing. 599; 8 Durn. & E. 503; 3 Barn. & Adol. 17; 1 Lord Raymond, 516; 6 Barn. & Cres. 566; 4 Barn. & Adol. 38; 3 Aik. 16.

2. Conceding that the former opinion is not conclusive on this court, still it should be supported because it correctly asserts the law. See 10 Ala. 702; and cases there cited on brief and in opinions.

3. As to the assignment that the assignee should be allowed to come in and claim this interest of Eli's. The interest sought to be condemned was never claimed by the assignee, except in his answer to the amended bill in this case. He was not bound to incur costs in such a case as this, by instituting legal proceedings to condemn this property ; nor can he now come in, an wrest it from complainants, who have succeeded in obtaining it condemnation after an expensive litigation of six years. H ought to have asserted his claim in a proper way, and within a reasonable time, two years at least. By not asserting it withi. that time he will be held to have waived it.—Eden on Bankruptcy, 344, (32 Law. Lib. 263;) 1 Henry Black. 665; 2 ib 402; 4 Term R. 193; 3 Swanst. 365; 3 Meriv. 279; 1 Branch 219; 1 U. S. (annual) Dig. 86, § 122; 13 Ala. 388; 6 Law R. (Nov. 1843,) 313; 4 Johns. R. 556; 4 Johns. Ch. 691; 8 Sm. & Mar. 710; 9 ib. 27; 1 Sandford's Ch. R. 135; 8 Ala. 194; 12 ib. 666.

4. As to the jurisdiction of the State Courts. There is no

proof that complainants had any notice of the proceedings in bankruptcy; they never proved their claim in the Federal Courts; the property sought to be condemned was never surrendered by the bankrupt; the assignee has not taken any proper step to subject it; the bill charges fraud in the omission to surrender it; there is no proof that there are any other creditors.—8 Ala. 198-200; 12 ib. 666; 6 Law Reporter, (Nov. 1843,) 313; 8 Smedes & M. 710; 9 ib. 27.

5. As to the error assigned by the wife and children of E. T. R., that as to them there is no proof of complainants' demand, this is founded on a mistake of fact, as the record shows.

6. The negroes Andrew, Parmelia and George should have been condemned absolutely to the satisfaction of complainants' debt. The answers of E. T. R. and W. R., and the proof establish conclusively, that there was a secret trust in these negroes for the benefit of E. T. R. W. R. had allowed him to receive the rents of the warehouse, &c., for several years, and there is no difference between the receipt of the rent in negroes, and the receipt in money.

WILLIAMS & CAMPBELL, *contra:*

The former decision of the court is not conclusive either on the assignee or the wife and children of E. T. R. The court only decided that they were necessary parties, and explicitly reserved the question of the sufficiency of the bill and its allegations as to them. The interest of Eli vested in the assignee; Rugely and Harrison had no lien which was protected by the bankrupt act. Their judgment did not bind the lands devised to W. Robinson in trust for Eli. There was nothing to intercept the operation of the bankrupt act.

The bill is fatally defective for the want of those averments which are necessary to give the court jurisdiction. Before the complainants could sue for this property, they should have proved their demand, and applied to the bankrupt court to compel the assignee to sue for its recovery. They cannot depart from the court of exclusive jurisdiction, and without a compliance with any of its rules and orders, and seek to collect their debt out of property which was never surrendered by the bankrupt, nor claimed by the assignee. There must be a special ground laid in the bill, to the effect, that the District Court had been applied to, and had refused to act, or that the assignee had been

27

applied to, and had refused to act, or there must be a charge of collusion or fraud. The assignee could have recovered the interest of the bankrupt by a summary application to the bankrupt court, or by a direct suit, and he would have held it for those creditors who proved their demands.—Story's Eq. Pl. §§ 516-726-495 ; 1 Young & C. 172 ; 11 Con. Eng. Ch. R. 306 ; 8 Sim. 28 ; 1 Johns. Ch. 305; 8 Ala. 694 ; 3 How. 292; Calvert on Part. 199.

The bill is equally defective in the averments and proofs necessary to give the court control of the cause.. It must be shown that the defendant was sued to judgment, and an execution issued to the county of his. residence, and returned " no property found." The averment of residence is made,. but it is denied by the answer, and is not supported by proof. The execution was returned " nulla bona," which is a nullity.—Reid v. Wheaton,. 7 Paige, 663.; 1 Dana, 516 ; 1 Clarke's Ch. R. 265-315 ; 1 Ala. 104 ; 7 ib. 318 ; 14 ib. 753 ; 10 ib. 433 ; 1 Barb. &. H.. Dig. 339 ; 3 Mylne & Craig, 407.

Even if the averments were sufficient, the decree would be erroneous. It should have been in favor of all the creditors.—1 Hill's Ch. R. 338 ; 4 Johns. Ch.. 619.

The interest of Eli in the trust property was not such as could be subjected by his creditors to the payment of his debts. He had no legal estate, but only a " use or benefit" such as could. not be reached by his creditors. The trustee would have violated his duty, if he had allowed any other interest. The general proposition laid down by the court, in their opinion condemning. this interest, is too absolute.. No consideration is allowed to the will of the testator, which is sacrificed to what is termed "public policy." Public policy requires that a man shall not have an estate provided for his separate enjoyment,. and yet. not liable to his debts. The manifest intention of the testator was that Eli should only have such an interest as could not be subjected by his creditors. They had no claim upon the testator's bounty, and cannot complain of any disposition that he may choose to make of his property. The proper inquiry would have been, not whether Eli's interest could be separated, but whether the trustee could possibly apply the property for the benefit of Eli and his family as directed by the will, and yet give Eli a separate interest. The whole object of the trust was for the joint use and benefit, and common enjoyment of the family.

CHILTON, J.—This case has been twice argued, and we proceed, with all possible brevity and simplicity, to decide the questions raised by the cross assignments of error. When the cause was in this court at a previous term, (see 10 Ala. R. 702) it was held by our predecessors, that as to the property bequeathed by the will of Tod Robinson to William Robinson, for the use and benefit of Eli T. Robinson and his family, and from the employment of which a revenue was to be derived, the interest of Eli was capable of separation by an account ascertaining his share in the nett product, and that such share when so ascertained, was liable to be subjected to the payment of his debts.

The case was remanded to the Chancery Court for a defect of parties, and after its return to that court, the wife and children of Eli Robinson, as also Edward F. Comegys, the assignee in bankruptcy, were added as parties defendants, by an amendment to the original bill.

1. The counsel for the defendants insist that the former decision of this court should not be considered as conclusive upon the rights of these new defendants who were not then before the court; and they strenuously contend that the court in that opinion mistook the law. Are we at liberty to disregard the former decision, were we disposed to do so, or is it obligatory upon us as settling the law of this case? Ordinarily courts very properly refuse to determine questions affecting the merits of a cause, in the absence of any person who is a necessary party, and whose interest may be prejudiced by such decision, for the obvious reason that the rights of no one should be judicially determined, without affording him an opportunity of protecting them. Without, however, now deciding what would be the correct rule when the decision affects the rights of parties wholly unrepresented upon the former trial, it is quite sufficient in this case to observe, that Comegys has not been injuriously affected by the previous decision, since, if he has any interest in this fund, that interest consists in having it declared subject to Eli's debts, and this is the gist of the opinion sought to be avoided. And as to the wife and children of Eli, they were represented, or rather their interest was protected by the trustee, at whose instance the question of the liability of Eli's interest was raised, and ably argued before and pressed upon the court, as the report of the case will show. We see nothing in this case which would justify us in

departing from the well established rule, that when a case is brought the second time before this court, we will not question the correctness of the law under which it was first decided.— Meredith v. Nash, 4 S. & P. 62; Gee v. Williamson, 1 Por. 321; Goodwin v. McGehee, 15 Ala. R. 239.

2. But it is argued that the amendment makes a new case, and that consequently it should have been disallowed. We do not think so. The object of the original bill was to subject the equitable estate of Eli in the hands of William, to the satisfaction of the complainants' judgment, which remained unsatisfied after exhausting their legal remedy. The defendants seek to avail themselves of Eli's bankruptcy, as a defence to the bill. To meet this defence, it became indispensable for the complainants to put in issue such facts, as would either avoid the discharge entirely, or show that it did not operate upon the property sought to be condemned, and this office the amendment to the bill in the case before us appropriately performs.—See the opinion in this case, 10 Ala. 702.

3. Having disposed of these preliminary points respecting the former decision, and the case authorized to be made by it, we proceed to the consideration of the alleged error assigned by Rugely and Harrison; namely, that the chancellor should have condemned three slaves, Andrew, Parmelia and George, to the satisfaction of their judgment, and should have decreed them to be sold, and the proceeds appropriated accordingly.

We have examined this voluminous record with much care to arrive at a correct knowledge of the situation of this property, and we think it very clear, that no trust was created by the verbal request made by Tod Robinson of William, to give to Eli the ware-house and ten acres of ground at Lochranza. It was a request which William had an election to comply with, or not, at his pleasure, and the court of equity could not have compelled him to comply with it. William, however, refused to comply with his father's request, but allowed Eli to rent the property, and to receive the rents for three or four years. It appears that the property was rented to one Tully, who executed his note for the same payable to William, together with a mortgage on two of these slaves to secure the payment of the same. The slaves were sold under the mortgage, and purchased in William's name by one Conly, on the 6th day of March, 1843, William

Rugely & Harrison v. Robinson.

refusing to allow any thing to be done in relation to this matter except in his own name. He then put them in possession of Eli, and they were worked in the crop with the other hands. Assuming that the receipt of the rent by Eli, mentioned in the answers of defendants, was in these slaves, the question arises, being a gift *inter vivos*, when did it become complete so as to vest the beneficial property in the donee? To answer this question, we have but to suppose that William, after he had purchased these slaves, had refused to deliver them to Eli, could the latter have maintained any action for their recovery? It is very certain he could not. It is essential to a gift *inter vivos*, that there be a delivery to the donee, and that the property in the thing given immediately pass to him, and that it be irrevocable by the donor. An exception to this rule obtains when the gift is by deed, duly consummated.—Banks v. Marksberry, 5 Lit. R. 278; Duncan's Adm'r v. Duncans, ibid, 12; Hunley v. Hunley, 15 Ala. 104, and cases cited. In such case the execution and delivery of the deed passes the property and renders the gift irrevocable.—Ib. This gift, being by parol, was incomplete before the delivery of the property; and where it is incomplete, equity will not interfere to complete it, but will leave the parties where the law finds them.—2 Story's Eq. Juris. § 706, a, and cases there cited. Conceding, then, that the delivery of these slaves by William to Eli perfected the gift, we are of opinion that anterior to that period William reserved a control over the rent and the notes given therefor, inconsistent with the idea of absolute property in Eli. It follows, therefore, as these slaves were delivered to Eli after he was declared a bankrupt by the decree of the District Court, they are not subject to the complainants' demand, unless they can set aside his discharge for fraud or wilful concealment of his effects, which should have been rendered in his schedule which accompanied his petition.

4. Let us then address ourselves to this inquiry, as the next in order. Conceding that Eli's interest in the property bequeathed by the will of his father to William, in trust for the benefit of himself and family, was such as should have been surrendered by him on his petition, and that he failed to embrace it in his schedule, it does not necessarily follow that the effect of such failure is to vacate *in toto* the certificate of discharge. It is hardly to be expected in any case, that an applicant for the

benefit of the Bankrupt Act should be able to set forth every article of property and every interest which he may have. Some he omit through mistake; others he may, consistently with the utmost good faith, conclude do not pass to the assignee under the decree in bankruptcy, and therefore need not be mentioned by him. The interest above alluded to, we think, is of such a character as to forbid the inference of fraud as a legal conclusion from the bankrupt's omission to set it forth in his schedule of effects. Its liability to the administration in bankruptcy was a question of much difficulty—one upon which learned jurists have differed, and upon which this court was divided, when called upon after solemn argument judicially to determine it.—10 Ala. 702. That the bankrupt, unskilled as we presume he is in intricate legal questions, should have supposed it not subject, and have acted upon such supposition, certainly is no evidence of the want of purity of intention, which should overthrow his discharge and stamp his conduct as fraudulent.

To set aside the discharge, there must be *fraud* or *wilful concealment* of his property or rights of property on the part of the bankrupt. This is neither averred in the bill nor shown anywhere in the record before us. True, the amendment to the bill charges that Eli's failure to render it in his schedule amounted to a fraud in law which should vacate the discharge. But this is but the assertion of an erroneous legal proposition by the pleader, unauthorized by the fact upon which he predicates it.—See Lond v. Pierce, 12 Shep. 233; Robison v. Wadsworth, 8 Met. 70; Burnside v. Brigham, ib. 75. It results from this view, that the Chancellor did not err in refusing to condemn these slaves, and that they are not liable, having been acquired after the discharge in bankruptcy, to the complainants' demand.

5. Let us next proceed to examine the errors assigned by the defendants below. Their main objection is, that immediately upon the decree in bankruptcy, the interest which Eli had in this property, (if he had such interest as was subject to his debts) passed to the assignee, and that the creditors, who have no lien which can override the decree in bankruptcy, cannot resort to a court of equity without alleging in the bill that the assignee refuses to sue for the property, or that he colludes with the other defendants, or some of them, with respect to the interest sought to be condemned.

Rugely & Harrison v. Robinson,

It is readily conceded, as a general rule, that after a person has become bankrupt and assignees are appointed, neither the bankrupt nor any of the creditors can ordinarily maintain any suit against a debtor to his estate, or to reduce any of his property into possession; for the right belongs to the assignees, and to give the creditor an equitable right of action, he must aver in his bill some collusion between the assignee and the other party, or that the assignee refuses to bring suit for the benefit of the bankrupt and of his estate.—Story's Eq. Pl. § 516. These certainly constitute the ordinary grounds upon which the aid of the court of equity is invoked; but it by no means follows that they are the only facts which give jurisdiction. Cases may and do arise, the peculiar circumstances of which call fully as loudly for equitable interposition, in order to prevent a failure of justice. We think the case before us is one of them, as a brief sketch of it from the record may suffice to show.

The complainants having obtained a judgment at law in March, 1836, and a return of "*nulla bona*" by the sheriff of the county in which the judgment was rendered, on the 18th September, 1844, filed their bill, alleging that they had exhausted their legal remedy, and that the defendant had property bequeathed in trust for his benefit, and praying that his interest might be subjected to the satisfaction of their demand. In reply to this demand, the judgment debtor denies that the interest sought to be condemned is subject, and insists also as a defence, that on the 9th September, 1842, he filed his petition in bankruptcy and obtained his certificate of discharge on the 25th of May, 1843. A protracted, and doubtless very expensive litigation ensued. The chancellor dismissed the bill, but this court reversed his decree and remanded the cause. In this proceeding it is ascertained that the assignee in bankruptcy is a necessary party. He was brought in by an amendment filed 30th October, 1846. After a delay of some nine months, the assignee answers the bill and denies the right of the State court to entertain jurisdiction of the cause. He insists upon his right to the property which the bill seeks to condemn, and says that he has never abandoned it, but claims it for the benefit of the creditors of the estate. It appears from his answer that Eli T. Robinson was declared a bankrupt on the 7th day of December, 1842. It thus appears that near five years intervened after the decree in bankruptcy,

Rugely & Harrison v. Robinson.

and about three years after the original bill was exhibited, before any claim was set up by the assignee, whereas, the bankrupt statute required that "all the proceedings in bankruptcy in each case, shall, if practicable, be finally adjusted, settled and brought to a close by the court, within two years after the decree declaring the bankruptcy;" and that "no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property or rights of property of the bankrupt, in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of suit shall have first accrued." Notwithstanding this provision for the speedy settlement of bankrupts' estates, and although this litigation was in progress, and the bankrupt had control and possession of this property from 1843, deriving his interest from the will of his father, proved and admitted upon the public records of the county in 1838, we say, notwithstanding all this, no claim is set up on the part of the assignee to Eli's interest, nor any effort made to investigate the character of his title. No proceedings whatever were instituted in the bankrupt court, or elsewhere, by him, to subject this interest to the administration in bankruptcy. And now, that more than six years have elapsed since the original bill was filed, while the record exhibits the assignee as contesting the complainant's right to subject this property, it fails to show that he has taken, or intends to take, any steps to subject it himself. He says he claims this property, and ought to be allowed to assert such claim for the benefit of the bankrupt's creditors; but he does not show that any creditors proved their demands in the bankrupt court. He claims it, but not until after the complainants have, by a protracted suit, ferreted it out and obtained the opinion of this court subjecting it. He connects his claim with no proposal to become the receiver of it for distribution by the appointment of the court, nor does he tender any amends for the expense which the complainants have incurred in condemning it. Under such circumstances we feel fully justified, and indeed required, by our view of the law, to regard his claim as *clamor et praeterea nihil*.

We will not say that under all the circumstances attending this interest, the assignee in bankruptcy was bound to make any

effort to subject the property, or separate the interest of Eli. It has been held, and we think correctly, that although all the property and rights of property of the bankrupt are, by the decree, vested in the assignee, still he is not bound in all cases to take possession of every part.—6 Law' Rep. 313. There may be rights of property of such doubtful character, and hedged about with so much of difficulty and embarrassment, as to require more expense to arrive at them than they would profit the estate when obtained. In such case the assignee should be allowed to exercise a sound discretion at his peril, and if he acts in good faith, and uses due caution, a court of equity would always protect him.

In Copeland v. Stephens, (1 B. & A. 573,) cited in the above case, it was held that under the English bankrupt law, the assignee was not bound with regard to leasehold estates to take the lease and charge the estate with the payment of the rent, because the rent may be more than the value of the lease, and thus a burthen rather than a benefit would be derived to the estate. So in regard to this case, it may be that the interest of the creditors has been promoted by the failure of the assignee to take any steps to recover the interest of Eli. Having this election whether to proceed or not for its recovery, he should have exercised it within a reasonable time; at least, we think, within two years from the time of the decree, within which period, the act contemplates the whole business shall be brought to a close. Failing to proceed, the creditor had the right to regard his claim as abandoned, and to proceed, after the assignee had neglected to do so for an unreasonable length of time, to subject the interest, disregarding the assignee's claim. To turn the complainants out of court, in order to give the assignee further time to elect, after what has transpired, would, in our opinion, be highly inequitable, and is required by no rule of law.

6. The claim of the assignee aside, it is quite clear that the defendants cannot avail themselves of the discharge of Eli, to protect him in the enjoyment of property which he never surrendered to the assignee in bankruptcy. To hold that the assignee should hold as against a creditor who never proved his demand in the bankrupt court, all the property which the bankrupt failed to render in his schedule, either through fraud or mistake, would be to tender a premium for fraud or negligence;

and would contravene the obvious spirit and meaning of the act. But as the record presents this case, neither this property nor these complainants have had any connection with the administration of the bankrupt's estate. The interest, as we have said, was never surrendered or claimed. The complainants did not prove their demand in that court, nor are we advised that they were ever, in any way, notified of the proceedings there had. Assuming, then, what we have endeavored to show, that the assignee has no claim which he can interpose to defeat the complainants' right to a condemnation of the interest of Eli, this interest remains subject to be decreed in satisfaction of their demand as though no decree in bankruptcy had been obtained.

7. Neither is there any objection to the State court entertaining jurisdiction. The bankrupt court in a proper case, and on a timely application by the assignee, in the exercise of the equity powers which were considered as conferred by the act, in order to render its provisions effectual, might perhaps have controlled the parties so as to have drawn the litigation into that court; but nothing of this kind was attempted or is proposed to be attempted. So long as the parties are left free to proceed in the State Court, that court will administer justice between them, irrespective of what might have been done in the Federal Courts, applying however the rules of interpretation of the bankrupt act which obtain in that court, when they are applicable.—Russell v. Cheatham, 8 Sm. & Mar. 703, and cases cited.

8. It is objected that the complainants have not exhausted their legal remedy, the return upon the execution by the sheriff being in Latin, "nulla bona."

Without instituting any inquiry as to the sufficiency of this return, it is a sufficient answer to say that the bill charges that an execution issued and was returned "no property found," and the answers of the only parties who are interested in the condemnation of the property admit the return as charged, so that no issue is made by the pleadings, and no question was raised either by Eli or William Robinson, involving an inquiry as to whether the complainants had exhausted their legal remedy.

We think it is quite sufficient that the parties against whom the decree is rendered, and the only parties to be affected by it, distinctly admit the due issue and return of the fi. fa.

9. The objection that the execution was not sent to the county

of the defendant's residence, cannot prevail, because it is not shown that the defendant had property in that county on which the writ could have been levied. If the defendant desired to avail himself of such objection, and to turn the complainants round to pursue their legal remedy in the county of his residence, he must show that he has visible property which can be taken in satisfaction in that county.—Brown & Dimmock v. Bates, 10 Ala. 440; Cassidy v. Meacham, 3 Paige 311.

10. The objection that the other creditors of Eli Robinson were not brought before the court, cannot be allowed. It does not appear that there are other judgment creditors, and as we have shown the fund sought to be subjected is unaffected by the proceedings in bankruptcy, the rights of the complainants are the same as in ordinary cases of judgment creditors obtaining a prior right of satisfaction by the use of superior diligence in first obtaining their judgment, and after exhausting their legal remedy being the first to file their bill, by which they acquire a prior lien upon the equitable assets. We think they may well file the bill for themselves alone.—Hendricks v. Robinson, 2 Johns. C. R. 283; Eaton v. Patterson, 2 Stew. & Por. 9; Lucas v. Atwood, ib. 378.

11. The first three exceptions to the master's report were properly overruled by the chancellor. The will of Tod Robinson does not provide *eo nomine*, for the support of Eli and his family; but the property is bequeathed to William, in trust, &c., for the use and benefit of Eli and his family. The interest of Eli being capable of being separated from that of the other *cestuis que trust*, in the profits arising from the employment of the property, as was previously decided, it was not proper to make any allowance for the support of the family, that not being the declared object of the trust. This point, however, is substantially decided by the previous decision.—10 Ala. 702.

12. As to the claim made, for the first time before the master, for the allowance of overseer's wages to Eli, for his services in superintending the business of the trust estate, we think the views of the chancellor entirely correct. Such demand is no where put in issue by the pleadings. Eli, in the account furnished by him in his answer, sets up no claim of the kind, and it does not appear that there was any understanding or agreement between him and the trustee that he should have compen-

Rugely & Harrison v. Robinson.

sation for his services, other than such as accrued from the possession and control of the property. He voluntarily assumed to act, and cannot make, by such voluntary services performed without request, the trust estate his debtor *nolens volens*.

13. As to the four negroes, Jake, Abel, George and William, which were purchased and to be paid for out of the trust estate, we are of opinion that the record shows no reason why their services may not be taken into the estimate, as the other trust property. They are to be regarded as property subject to the incidents which pertain to the other trust estate, notwithstanding they may not have been paid for, the trust property being bound for their payment. And if the lien which William Robinson has upon them for the purchase money forbids, by its provisions, that the product of their labor should be regarded as a part of the trust estate, this should have been shown by the production of the mortgage.

14. We think it sufficiently appears from the report of the register, that the slaves Parmelia and Andrew were taken into the account as trust property, and the products of their labor, so far as Eli's interest was concerned, subjected to the complainants' demand, and this constituted one of the exceptions taken by the defendants below, and is here assigned for error. We have already shown that these slaves must be regarded as the property of Eli, acquired since his discharge. That William retained the control over the rents, taking the evidence of Tully's indebtedness for it in his own name, as also the mortgage, to prevent its liability to Eli's debts, is not material. He was not bound to give it to Eli, and he could well refuse to perfect the gift as long as he pleased, with the avowed object of preventing Eli's creditors from interfering with it. And so long as it remained imperfect for want of delivery, the creditors could acquire no right to subject it. When the delivery was made, the property in the thing given would vest, and not before, although there was the previously declared intention to give. So that we think the argument that this was a secret parol trust, designed to defraud creditors, is not sustained by the record. Had the request made by the testator of his son William created a trust in favor of Eli, then the argument would apply with much force; but as William had a right to do as he pleased with his own, provided he injured no one, it is not for the creditor to com-

plain that he would not so complete the gift as to render the property liable to the debts of the donee. It is clear we think that he did not complete it until after Eli's discharge. Hence the property is not subject to the complainants' demand. It follows that the court erred in charging the product of the labor of these two slaves as trust property for division. They should not have been taken into the estimate.

We believe that we have now noticed the several errors assigned, and we are unable to perceive any error in the record except that last above referred to. For this, the decree must be reversed, and the cause remanded, that the report of the master may be corrected as to the slaves Andrew and Parmelia. In all other particulars, the decree is correct and must be affirmed. Let Rugely & Harrison pay the cost of this court.