Brookfield v. Stephens.

---

## BROOKFIELD VS. STEPHENS.

1. ADVERSE POSSESSION: *Evidence of:*
   Evidence that a party was in possession of land for the statutory period of limitations, which he had mortgaged and afterwards scheduled in bankruptcy, subject to the mortgage, but not show-

ing how, or by what acts he maintained his possession, nor the nature of the property, how improved, or whether improved at all, is not evidence of *adverse* possession.

2. BANKRUPTCY: *When assignee may decline encumbered property*:
An assignee in bankruptcy is not bound to accept all the property scheduled. He may decline such as is so encumbered that it would be fruitless to redeem or foreclose it, and if he does so, it remains the property of the bankrupt; and he will be presumed to have declined it unless he indicate by some act, within the time fixed by the policy of the law for the settlement of the bankrupt's estate, his intention to appropriate it.

APPEAL from *Cross* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*J. M. Rose & B. C. Brown* for appellant.

To the N. W. S. W. ¼ of S. Brookfield's title was undisputed, Taylor's deed not even purporting to convey that piece.

Tne mortgage was void and no notice, because it failed to specify the lands purported to be conveyed by it, with any certainty. *Mooney v. Cooledge*, 30 *Ark.*, 640; *Fuller v. Fellows, Id.*, 657.

In paying off the mortgage, Driver only paid his own debt. ·Taylor was in no way liable for it, and can bring himself under none of the heads where the equitatble doctrine of subrogation has been applied. *Sheldon on Subrogation, Sec. 11.*

The statute of limitations between the bankrupt and his assignee did not run in this case. No adverse possession was shown. It nowhere appears that the land was cultivated, enclosed or in the actual possession of any one. See *Angell on Limitation, Secs*, 390–392.

The suit was not barred by *Sec.* 5057, *Rev. St. U. S.* This limitation applies only to suits growing out of disputes in respect to property and rights of property of the bankrupt, which come to the hands of the assignee, and to which

Brookfield v. Stephens.

adverse claims existed while in the hands of the bankrupt and before the assignment, &c. *In re Frederick J. Conant,* 5 *Blatch* 54; *Stevens v. Hauser,* 39 *N. Y.* 302.

A mortgage does not of itself constitute an adverse claim, it is simply a lien and confers no estate upon the mortgagee. *Price v. Phillips,* 3 *Robt.* 448.

This section does not apply to sales and conveyances. *Warren v. Miller,* 38 *Me.* 108; *Holbrook v. Benner,* 31 *Ill.,* 501; nor to a party who takes possession of the property after the commencement of the proceedings in bankruptcy. *Stevens v. Hauser,* 39 *N. Y.* 302. See also *Sedgwick v. Casey,* 4 *Bank. Reg.* 496; *Smith v. Crawford,* 9 *Ib.* 38; *Carr v. Lord,* 29 *Me.* 51.

The title of Driver passed to his assignee by the Register's assignment and his deed to Taylor passed no title.

*Geo. H. Sanders,* for appellee.

By the assignment, all interest of Driver vested in the assignee. *Sec.* 14, *Bank. Act; Bump on bankruptcy, p.* 342, *note A, and p.* 325, *note "b," and* 326, and he became a stranger to the estate as between him and the assignee.

The legal title, by virtue of the mortgage, vested in Dodson, Stanby & Co. Driver only held the equity of redemption, which passed to the assignee by assignment in bankruptcy. The payment of the debt entitled him to subrogation. *Jones on Mortgages, Vol.* 1, *Sec.* 877, 879; *Stillman v. Stillman,* 21 *N. J., Eq.,* 126; *In re Gregg,* 3 *B. R.,* 131. This right passed to Taylor under the conveyance.

Plaintiff was not an innocent purchaser without notice, for the order of sale directed the land to be sold subject to the mortgage.

2. The suit was barred. *U. S. Rev. St., Sec.* 5037, as set forth and concurred in *Geisreiter v. Sevier,* 33 *Ark.,* 522.

STATEMENT.

EAKIN, J. On the 27th of November, 1871, John Driver filed his petition in bankruptcy, in the District Court of the

Western District of Arkansas, with schedules of 'his debts and assets. The former consisted of a single item of $800, due Dodson, Stanley & Co., reported as secured by a deed of trust on his cotton crop and a small tract of land, the fractional S. W. ¼ of section 5, in T. 6, N. Range 3 East. This, with the N. W. ¼ section 8, as the effects of the petitioner, was transferred to the assignee in the usual form.

It does not appear that any thing was done under the bankruptcy proceedings for a period of more than seven years. The bankrupt himself paid the only debt in the schedule. It affirmatively appears that the assignee never took possession of the lands. There were no other assets save the cotton crop reported as mortgaged for the debt, and which probably was taken by the creditor.

Afterwards, by order of the Court certified to him on the 10th day of February, 1879, the assignee advertised the tract in section 5; and on the 15th of March following sold to plaintiff, J. C. Brookfied, all the interests which the bankrupt had therein, subject to the mortgage. The sale was reported and confirmed. The tract in section 8, being the homestead, was not sold.

Upon the title thus acquired, Brookfield brought ejectment in the Cross Circuit Court on the 26th of January, 1880, against two parties alleged to be in possession, against whom judgment by default was taken at the April term, 1880. This seems to have been disregarded, for at the same term Taylor was allowed to come in and answer, denying the ownership of plaintiff, and claiming that the two parties sued were his own tenants. He set up also, in another answer, what he claims to be an equitable defence, as follows: That he purchased the land by deed from the bankrupt Driver, on the 27th of February, 1879, without any knowledge of the bankrupt proceedings, beginning in 1871;

That he did not know, that the lands were involved in the bankruptcy of Driver; that if the assignee had any title he kept it concealed for a long time; that he never took possession, or attempted to set up any claim; that Driver contintinued to pay taxes, and to all appearance was the sole owner; that Driver and he, himself, had been in open, notorious and adverse possession for more than seven years before suit, and after the petition in bankruptcy; that the assginee was not in possession at the time of the sale to plaintiff, which the latter well knew; that Driver after filing his petition and being adjudicated a bankrupt, continued in possession, and paid off the mortgage debt before selling to defendant; that it is not worth over $600; that Driver in paying off the mortgage debt became entitled to the rights of the mortgagee, and that, in equity, this right passed to defendant on his purchase from Driver. He relies upon his right by limitation, but asks in the alternative that if that be not allowed, he be subrogated to the rights of the mortgagee, and for foreclosure. The deed exhibited, includes both tracts of land, except that the one in controversy is described as the south half and the north east quarter of S. W. ¼ of section 5, instead of the fractional S. W. ¼ of section 5. As there are only 115 acres in the quarter section, and as the two parts of it designated in the deed would of themselves ordinarily contain 120 acres, it is pretty certain that they include all there is of the S. W. ¼ of section 5, and that it is fractional by reason of wanting the north west quarter. The mortgage also exhibited, was upon the cotton crop and upon the lands in section 5 alone, described there, as the south east part of the quarter section.

The defendant pleads specially also the limitation of two years, under the bankrupt act.

The bankrupt had not been discharged until after the sale by the assignee.

Brookfield v. Stephens.

The cause was heard in equity. The Court by its decree sustained the title of defendant, and rendered judgment against plaintiff for costs.

### OPINION.

With regard to the claim for subrogation, the answer shows no equity. The facts stated bring the case within none of the recognized principles upon which the right of subrogation rests. The bankrupt, by his subsequent discharge, which had relation to discharge all claims which might have been proved in the proceedings, was under no *legal* obligation to discharge the mortgage debt. If he felt under a moral obligation to pay it, it was none the less his own. The effect was to discharge the property of the burden, and it enured to his benefit, in any view of the case. There were no other debts. If the assignee had taken and claimed the equity of redemption, there would have been a surplus of assets which would have reverted to the bankrupt without the aid of subrogation. If not, the benefit of the payment enured to the bankrupt at once. He took no assignment of the mortgage, to put himself in the attitude of a stranger, or purchaser with new acquisitions.

The defenses as to limitations depend on the adverse nature of the bankrupt's possession. Defendant Taylor purchased on the 27th of Feb. 1879, and unless he can tack his adverse possession to that of the bankrupt, neither period of limitation had elapsed before suit. *1. Statute limitations.*

Although the witnesses all say that the bankrupt remained continuously in possession, yet they do not disclose how or by what acts the possession was maintained, nor do they show the nature of the property, how improved or whether improved at all. These are important in determining whether it was really adverse. There is enough in the exhibits to enable us to infer that the land to which it was adjacent, was the homestead of the bankrupt, and assigned to *Adverse possession; evidence of.*

him as such, but nothing to show that any of the improvements extended over the land in question. Looking solely to the *nature* of the possession, we cannot see that it was adverse. The bankrupt had scheduled it as subject to the mortgage, and his possession might, so far as appears, have been all the time consistent with the right of the assignee, if there were nothing else in the case.

But there are very peculiar circumstances in the case—the most remarkable being the fact that Driver went into bankruptcy at all; and it is equally mysterious, why the assignee wished to sell. Driver only owed $800, which the proof shows he paid off in full, by installments; the last being paid in 1875. It does not appear that any costs were due. It is easy enough to understand why the assignee did nothing for nearly eight years. Incomprehensible, why he did anything afterwards. There was no debt left to be paid by a sale. In this case the maxim applies, that what does not appear, cannot be considered to exist.

2. BANK-RUPTCY: When assignee may decline encumbered property. It is now well settled by many decisions, Federal and State, that an assignee need not take possession of, nor claim *all* the property in a bankrupt's schedule. In case certain property should be so encumbered, that it would be injudicious to redeem it, or idle to foreclose it, with any view of realizing anything to the assignee, he may decline to receive it and it remains the property of the bankrupt. For this conclusion we are indebted to the Hon. H. C. Caldwell, U. S. Judge of the Eastern District of our State. In an able and very careful opinion, rendered in the Circuit Court for that District in the case of *Kimberling v. Hartley et al, reported in Federal Reporter, Vol.* 1, *p.* 571, *and* 1st *McCrary,* 136, the learned Judge found it necessary to determine this question and he collects the authorities. In that case there had been a proceeding in the State Court by a judgment creditor against his debtor, to set aside a fraudulent convey-

ance, and pending the proceedings the debtor on his own petition was adjudged a bankrupt. His assignee declined to intervene and the property was sold under a decree of the State Court, and purchased by the creditor, who was afterwards sued in ejectment by a subsequent vendee of the bankrupt.. There were other points in the case distinguishing it from this, but upon the point announced above, the Judge says: "If the property did not exceed in value the amount of Hartley's lien against it, and other creditors would derive no benefit from the suit, the assignee acted wisely *in not intervening*, and allowing the lien creditor and the bankrupt to settle the controversy between themselves, in the State Court, without expense to the estate." That is to say, in abandoning all claim to what would be useless.

In support of the position that an assignee is not bound to take *all* the property of the bankrupt, but may reject such as may be rather a burden than a benefit to the estate, he cites 1 *Deacon on Bank*, 535; *Amory v. Lawrence*, 3 *Clifford*, 523, *et seq; McLean v. Rocky*, 3 *McLean*, 235; *Rugely & Harrison v. Robinson*, 19 *Ala.*, 404, 417; *Glenning v. Langdon*, 98 *U. S.*, 20, 30; *In re Lambert*, 2 *Bank Reg.*, 138.

We have examined the cases and find that they not only give full support to the principle announced in the case under consideration by Judge Caldwell, but go further, and hold that the assignee is bound in a reasonable time to exercise his election, and if he neglects for a considerable period, longer than consists with the speedy settlements of bankrupts' estates, as required by the policy of the law, and does no act indicating an intention to make the special asset available, he will be presumed to have declined it, and it will remain the property of the bankrupt. This is expressly asserted in the cases above quoted from 3d Clifford and 19th Alabama, and follows by direct logical sequence from the rulings in all the others. It is based upon English decisions

under the statutes, which are direct to the point. In *Rugely & Harrison v. Robinson, (supra)*, the Court cites *Copeland v. Stephens*, 1 *B. & A.*, 573, in which it was held that an assignee in bankruptcy was not bound to take a lease hold estate burdened with such rent as to make it valueless, and proceeds to say, with regard to the case then in judgment: "It may be held that the interests of the creditors have been promoted by the failure of the assignee to take any steps to recover the interests of Ely, (the bankrupt). Having the election whether to proceed or not for its recovery, he should have exercised it within a reasonable time; at least, we think, within two years from the time of the decree, within which period the act contemplates the whole business shall be brought to a close." To the same effect are the others.

When the petition in bankruptcy was filed, in 1871, the land in question was burdened by a lien in excess of its value. The assignee never took possession of it nor claimed it until Feb. 1, 1879, when he obtained an order to sell it. The policy of the bankrupt law requires a speedy settlement of the bankrupt's affairs. For this reason alone, the short period of two years limits all actions for or against the assignee. The assignee was not bound, and under the circumstances, ought not, as a matter of prudence, to have burdened himself with such an asset. It could not possibly have been available to him in any way. The presumption is that he rejected it. More than seven years afterwards, the bankrupt, having redeemed the land, sold it by deed duly recorded, before the plaintiff purchased from the assignee.

It would be very inequitable to allow the assignee to thus blow hot and cold, and claim or reject the asset as it might chance to become more or less valuable. He must be presumed to have declined to take it, and it therefore remained

in equity the property of the bankrupt, and passed to his vendee.

The equitable defense was good, and we find no error in the decree.

Affirmed.